SENN *et al.* v. THE SOUTHERN RAILWAY COMPANY, *Appellant.*

DIVISION TWO.

1.    **Negligence: STREET CAR: RUNNING OVER CHILD.**    In an action for the death of a child who was run over by a street car, drawn by two mules, the evidence tended to show that the deceased with a companion was driving a cow from a westerly direction across the street; that in crossing he was tripped by the east mule and thrown on the track and the front wheel of the car passed over his leg.    The driver testified that he saw neither of the boys until after the accident, and there was also evidence which tended to show that the attention of the driver was at the time directed to some person standing on the west side of the street.    *Held,* that the question of defendant's negligence was for the jury.

2.    ———: ———: ———.    Reasonable care required the driver to keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it and on the first appearance of danger to such persons to use all reasonable efforts to avoid injuring them.

3.    ———: ———: EVIDENCE: RES GESTÆ.    The child's father did not see the accident, but reached the place within two or three minutes after its occurrence.    He was asked on the trial what he said to the driver, and answered: "I said to him, 'It was your careless driving,' and took the boy and carried him into the house."    The next question was what then occurred, and he answered: "I sent for the doctor."    *Held, first,* that the declaration of the father was not a part of the *res gestæ,* and was inadmissible, and, *second,* that the evidence failed to show that the driver made no denial of the charge.

4.  **Practice**: HYPOTHETICAL QUESTION: WITNESS' OPINION.  A hypothetical question should embody substantially all the facts relating to the subject upon which the opinion of a witness is asked.

5.  ———: NEGLIGENCE: EVIDENCE.  The clothing of one injured by being run over by a street car is competent evidence in an action therefor, when it tends to establish any controverted fact in issue.

6.  ———: ———: HARMLESS ERROR.  Where the instructions given in such action required the driver of the car to exercise only that care which the common law imposed upon him, the introduction in evidence of a city ordinance in part invalid, because requiring an unreasonable degree of care, will be deemed harmless.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED AND REMANDED.

*Lubke & Muench* for appellant.

( 1 )  The trial court erred in admitting as evidence against defendant the declaration of plaintiff, Christian Senn, as to the cause of the accident, made to the driver after the transaction was complete.  The declaration in question was not admissible as being of the *res gestæ*. *State v. Snell*, 78 Mo. 240; *Leahey v. Railroad*, 97 Mo. 165.  And the witness was not a participant so as to make his declarations evidence.  *State v. Elkins*, 101 Mo. 344.  Even if the driver had expressly assented to the declaration, it would still have been incompetent against the company.  *Adams v. Railroad*, 74 Mo. 553.  ( 2 )  The trial court erred in allowing the clothing of the boy to be shown the jury.  Defendant's counsel admitted that the boy was injured by the car of defendant.  There was no issue in the case as to which this clothing was relevant testimony, and the flourishing of these garments before the jury was calculated only to excite prejudice against defendant company.  A controlling reason why irrelevant evidence is to be excluded is, "that such evidence tends to draw away the minds of the jurors from the point in issue and to excite

prejudice and mislead them." 1 Greenl. Ev. [12 Ed.] sec. 52. The improper admission of this irrelevant evidence cannot be deemed harmless. It was intended to and did influence the jury against defendant, especially after the trial judge gave the declaration weight by ruling it into the case. *State v. Whelehon*, 102 Mo. 18. Admission of improper evidence is presumptively prejudicial. *Dayharsh v. Railroad*, 103 Mo. 570. (3) The trial court erred in overruling defendant's objections to the city ordinance. *First.* The city of St. Louis had no power to pass this ordinance. Its powers, specified by the scheme and charter as to the operation of street railways, are: ( *a* ) Authority to license, tax and regulate. Scheme and Charter, 5 sub., sec. 26, art. 3 ; R. S. 1889, p. 2097. ( *b* ) Authority to "regulate and control" their "fares, hours and frequency of trips, and the repair of their tracks, and the kind of their rails and vehicles." 11 sub., p. 2099. ( *c* ) Authority "to regulate the time and manner of running cars, and the rates of fare, * * * and the sale of tickets, and exchange thereof between the several companies." Scheme and Charter, sec. 2, art. 10 ; R. S. 1889, p. 2133. *Second.* The ordinance is illegal, for that it is oppressive and unreasonable, and is not in harmony with the general law of the state which requires only ordinary care. Municipalities are not invested with the powers of sovereignty ; their ordinances must be fair and reasonable, otherwise the courts will hold them void. *Corrigan v. Gage*, 68 Mo. 541 ; *Railroad v. Springfield*, 85 Mo. 674 ; *Hannibal v. Tel. Co.*, 31 Mo. App. 23. (4) The court erred in overruling defendant's objection to the hypothetical question put to witness Kunkel. *Gurley v. Railroad*, 35 Mo. App. 95 ; *Igo v. Railroad*, 38 Mo. App. 377.

*Dodge & Mulvihill* for respondents.

(1) The trial court did not commit error in admitting in evidence the declaration of Christ. Senn. This

was, according to undisputed testimony, only two min-
utes after the boy had been run over and while he was
being picked up, when Charlie, Tommy Bell and the
driver were, all together, before they had separated or
had made any explanation, and right at the scene of
the injury.  The statement that it was " careless driv-
ing " was a spontaneous explanation of the real cause;
a verbal act, and really a part of the *res gestæ*, made,
too, by one who could, under no circumstances, bind
the company.  There was no reply.  *Leahey v. Rail-
road*, 97 Mo. 165, and cases cited ; Greenl. Ev. [13 Ed.]
sec. 108.  ( 2 )  There was no error in showing to the
jury the clothing worn by Charlie Senn at the time he
was injured.  There was no admission by counsel for
defendant that the deceased was injured by the car of
the appellant.  The clothes worn showed what part
of the body was injured, the size of the boy who wore
them and the relative position when injured.  The
position of the boy as he laid on the track, as testified
to by witnesses for the respondents, is borne out by the
condition of the clothes worn.  There is no difference
between showing the clothes worn and showing the
injured part.  *Railroad v. Wood*, 113 Ind. 544 ; *Hays
v. Railroad*, 70 Tex. 602 ; Wharton, Crim. Evidence,
sec. 312 ; *State v. Stair*, 87 Mo. 268 ; *State v. Weiners*,
4 Mo. App. 49 ; *State v. Lewis*, 80 Mo. 110 ; *Mulhado
v. Railroad*, 30 N. Y. 370.  ( 3 )  There was no error in
allowing the expert, Frank Kunkel, to answer the
hypothetical question, as it contained all the essentials
to such a question in the case at bar.  Where only
professional knowledge and experience are involved
upon a given state of facts, the question is competent.
*Maher v. Railroad*, 64 Mo. 267 ; *Morrill v. Tegarden*,
19 Neb. 534 ; *Quinn v. Higgins*, 63 Wis. 669.  ( 4 )
*First*.  The section of the ordinance read in evi-
dence was properly admitted under the pleadings and
evidence, and under the recent ruling of Chief Justice
SHERWOOD in *Fath v. Railroad*, 105 Mo. 537, and ·

overruling the same case cited by the appellant in 39 Mo. App. 447; *Liddy v. Railroad*, 40 Mo. 506. *Second.* If the ordinance is reasonable, and not inconsistent with the law of the state or charter, it is valid. Judge THOMAS' opinion in *Railroad v. Railroad*, 15 S. W. Rep. 1013; 1 Dillon on Mun. Corp., sec. 420; *St. Louis v. Knox*, 6 Mo. App. 247; *Robertson v. Railroad*, 84 Mo. 119. *Third.* The burden of proof is on the appellant to prove the inconsistency or illegality of the ordinance. This was not done. *Fourth.* The violation of the city ordinance read in evidence was negligence *per se*. *Murray v. Railroad*, 101 Mo. 236. *Fifth.* An objection to the whole section of a city ordinance, of which a part is clearly relevant, is rightly overruled. *Wilkins v. Railroad*, 101 Mo. 93. ( 5 ). There was no error in the instructions as given by the trial court. They fairly presented the law applicable to the case, and on the whole are favorable to the appellant. *McCarthy v. Railroad*, 92 Mo. 536. ( 6 ) *First.* The jurors are exclusive judges of the weight of testimony, and, after the trial judge has passed on the motion for a new trial, this court will not reverse a judgment upon such ground, unless there has been passion or prejudice, and a flagrant abuse of the right. *Rosecrans v. Railroad*, 83 Mo. 678; *Anderson v. Griffith*, 86 Mo. 549. *Second.* When the evidence is conflicting the verdict will not be disturbed. *Third.* Upon the whole case the judgment was for the right party, and this court, in reviewing the case upon such a showing, should affirm the judgment. *Drain v. Railroad*, 86 Mo. 582; *Wilkins v. Railroad*, 101 Mo. 93.

MACFARLANE, J.—This action was commenced for damages under section 2121, Revised Statutes, 1879, for the death of the minor son of plaintiffs, Christian Senn and wife, on account of alleged negligence of a driver of a street horse car on defendant's road, in driving and managing the same. Plaintiff obtained

judgment for $5,000, and defendant appealed. Since the appeal Mary Senn, the wife, has died, and the cause has been revived in the name of Charles Scudder, administrator. Defendant is a corporation owning and operating a street railway in the city of St. Louis.

The negligence charged was a failure of the driver of a car to observe the requirement of an ordinance of the city as follows :

"The conductor and driver of each car shall keep a vigilant watch for all vehicles and persons on foot especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles the car shall be stopped in the shortest time and space possible."

It was charged, in substance, that Charles Senn, son of plaintiffs, between six and seven years of age, was driving his father's cow across the track of defendant's railway, on north Broadway, in the city of St. Louis, and the driver of one of defendant's horse cars negligently failed to keep a vigilant watch for persons moving towards or upon the track, and negligently failed on first appearance of danger to the son of plaintiffs to stop the car, by reason of which their said son was knocked down and killed. It was also charged, in substance, that the death of plaintiffs' son was caused by the driver of the car negligently and carelessly driving the team attached to said car, and thereby allowing said team to run against and knock their son down, and the car to run over him.

The answer admitted the incorporation of defendant, that plaintiffs were husband and wife, that Charles was their son and that he was a minor, but denied all other allegations. It also charged contributory negligence on the part of deceased.

I. It is insisted that the evidence fails to make out a case of negligence which should have been submitted to the jury. It must be conceded that the facts immediately connected with the accident are not made clear

and satisfactory by the evidence. Though there were three eye-witnesses to the injury we only get the information from their testimony that the boy was tripped, or thrown down, by the mule on the east side. It is not shown how deceased approached the track, except in a general way that he was driving a cow from the west to the east side of the street. It does not appear whether he stopped on the track, or tried to run across under the heads of the mules, or how he approached the track. On the question of contributory negligence it is not shown what the mental capacity and discretion of the boy was or what his experience in being about street cars had been, or what knowledge he had of their dangerous character. All those facts should have been shown as clearly as practicable to have given either court or jury information sufficient to enable them to form an intelligent opinion of the proximate cause of the accident. Still we think the evidence tended to prove the allegations of negligence contained in the petition. The car, drawn by two mules, was running south on Broadway street. Deceased with a companion was driving a cow from the west across the street. Two or three witnesses testified that the cow and the other boy had crossed the track, whether in front of or behind the car does not appear. Charlie, the deceased, in crossing was tripped by the east mule and thrown on the track, and the front wheel of the car passed over his leg. The driver testified that he saw neither of the boys until after the accident. There was also evidence which tended to prove that the attention of the driver was, at the time, directed to some person standing on the west side of the street.

This railroad track occupied a public highway which was open to the use of all persons, including children. Aside from the duty enjoined by the ordinance, reasonable care required of the driver "to keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track, or moving

towards it," and "on the first appearance of danger to such persons" to use all reasonable efforts to avoid injuring them. A failure to observe these precautions would constitute negligence.

II. Within two or three minutes after the accident, and while the driver held the injured boy in his arms, Christ. Senn, the father, reached the place, and immediately accused the driver of careless driving as the cause of the accident. On the trial he was permitted to testify, over defendant's objection, to having made this accusation. Complaint is made of this ruling of the court. There has been much said and written as to when and under what circumstances the declarations and admissions of an agent will bind the principal. It is generally agreed that they will only do so when the declaration and fact to be proved " are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be the spontaneous exclamation of the real cause. The declaration is then a verbal act, and may well be said to be a part of the main fact or transaction." *Leahey v. Railroad*, 97 Mo. 167, and cases cited. The same rule is applied, upon the same reasoning, to the declarations or exclamations of an injured person which are explanatory of the cause of the injury. See review of authorities in *Leahey v. Railroad, supra*. It will be seen that the admissibility of such evidence depends necessarily upon the fact that the one whose declarations are sought to be proved had intimate connection with the transaction, which is the subject of the controversy. The declarations of one who had no connection with or knowledge of the transaction could not become a part of the transaction so as to make them admissible.

The witness himself testified that he did not see the accident, and had no knowledge of it until he heard the shouts, and saw the driver holding his boy in his arms. His declaration to the driver was simply an outburst of grief, and not a "spontaneous declaration

of the real cause" of the injury about which he knew
nothing. He was neither the agent of the defendant
nor the person injured, nor a witness to the occurrence
and was moreover himself a witness on the trial. His
declarations were clearly inadmissible. *State v. Brown*,
64 Mo. 371; *State v. Sneed*, 88 Mo. 138; *State v. Elkins*,
101 Mo. 351.

III. It is insisted that though Senn's declaration,
taken alone, may not have been admissible, it is so when
considered in connection with the fact that the driver
made no denial of the charge. A sufficient answer to
that contention is, that the witness was not asked, nor
did he testify, that the driver made no answer. The
question was asked: "What did you say to the driver?
I says to him that 'It was your careless driving,' and
took the boy and carried him into the house." The next
question was: "What then occurred? *A*. I sent for
the doctor." For all that appears the driver may have
denied the accusation.

IV. We also think the court committed error in
permitting witness Kunkel to give his opinion as to the
distance in which a car could be stopped under the
facts hypothetically stated to the witness. Before such
opinions are admissible the hypothetical question should
embody substantially all the facts relating to the subject
upon which the opinion of the witness is asked. The
question asked the witness was as follows: "*Q*. Mr.
Kunkel, if the car is going at a slow trot down a grade
of two to three feet to the block with a few passengers
in the car, and the track is dry and the driver is stand-
ing at his post, and a boy is crossing the track in front
of the mules, how far will the car go before the driver
can stop it? *A*. The car can be stopped in from twenty
inches to two feet on a dry track."

The evidence in this case shows that there are dif-
ferent kinds and sizes of cars, some drawn by one and
some by two horses. That this was a two-horse car

drawn by two mules. That there was only one passenger in the car, and it does not appear that the track was dry. The experience of the witness was principally in driving what they called a "bob-tail" car. Whether his opinion was predicated upon one kind or another cannot be known. His opinion was worthless and might have been misleading if given on a state of facts that did not exist. Before he could have given an intelligent opinion he should have been put in possession of all material facts, affecting the ability of the driver to stop the car, as they existed at the time. The discrepancy between the facts proved and admitted in the case, and the facts upon which the opinion was given, may have been very material.

It cannot be said that, because the driver never saw the boy on the track at all, and made no effort to stop until after the occurrence of the accident, the testimony of this witness was immaterial. If the accident could not have been avoided, after the danger became apparent, then the negligence in not stopping the car could not have been the cause of the collision.

So the liability of defendant depends upon whether the car could have been stopped after the first appearance of danger, and it became important to know in what distance that particular car, at that place, with the condition of the track then existing, could have been stopped. We do not think this witness was sufficiently informed of the facts, as they were stated in the hypothetical question, to make his opinion admissible.

V. In the course of the trial plaintiffs were permitted to exhibit before the jury the clothing worn by the boy at the time of the accident. It is insisted that the court erred in allowing this to be done. There can be no doubt that such evidence is always admissible when it tends to establish any controverted fact or issue. "This is, of all proof, the most satisfactory and convincing." 1 Best on Evidence [Morgan's Ed.] sec. 197; *State v. Buchler*, 103 Mo. 205; *State v. Wieners*, 66 Mo. 13.

We are notable to say that the condition of the clothing did not tend to establish some disputed and material fact connected with the accident. It is true the injury and death therefrom were admitted, but the clothing showed indisputably the position in which the boy's leg was placed when run over, and it may have tended to prove whether he was thrown upon the track by the mules, as contended by plaintiff, or was thrown down in an attempt to jump on the car, as was the theory of defendant. The admissions made by defendant were not sufficiently comprehensive to include every fact the condition of the clothing tended to prove.

VI. The validity of the ordinance which undertakes to establish a standard of care to be observed by street-car drivers, in running and managing the cars used in the streets of the city, is questioned by defendant on the ground that it is unreasonable and oppressive, and is not in harmony with the general laws of the state, as well as upon the ground that the city had no power to pass it. The objection urged is to that part of the ordinance which requires the driver "on the first appearance of danger" to children and others to stop the car "in the quickest time and space possible." The same ordinance was before this court in *Fath v. Railroad*, 105 Mo. 537. In that case the ordinance was held valid on the ground that the railroad company obtained its right to use the streets of the city, under a contract by which it agreed to be governed by such ordinances as were in force, or might thereafter be enacted for the regulation of such use. In this case the record shows no contractual relations between the city and the defendant railroad company, and for that reason the rule laid down in the *Fath case* cannot be applied in this. Whether the ordinance, in imposing upon drivers of street cars a higher degree of care than that required by the rules of the common law, would be so unreasonable and oppressive as to render it invalid as a police regulation, we do not think it necessary to inquire in

this case. The instructions under which the case was submitted to the jury only required of the driver that care which was imposed upon him as a common-law duty, independent of the ordinance, and we are unable to see that defendant could have been injured by the introduction of the ordinance in evidence, though it may have been in part invalid.

As a retrial will be necessary, the pleadings can be amended, and the case tried in such a manner as to test the validity of the ordinance if the parties desire to do so. Reversed and remanded. All concur.