## SEPETOWSKI, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, November 3, 1903.

1. **Pleading:** STATEMENT IN JUSTICE COURT. In a suit commenced before a justice of the peace where no formal pleadings are required by either party, and where, as in this case, only a statement of the facts constituting the cause of action is required, it matters not into how many paragraphs it may be divided; if the whole states facts which constitute a cause of action and is sufficient to bar another suit, after judgment, on the same cause of action, the complaint is good, however inartificially it may be stated.

2. ———: ORDINANCE: PROOF OF ACCEPTANCE NOT NECESSARY. It is unnecessary to specially plead an ordinance requiring street railway companies to keep vigilant watch, etc., or prove its acceptance, before it can be read in evidence.

3. **Negligence:** DUTY OF STREET CAR MOTORMAN: LAST CHANCE. It is a settled rule in this State, that if a street car motorman saw, or by the exercise of due diligence could have seen, plaintiff's perilous condition in time to have stopped or checked the car and avoided the accident, though the plaintiff negligently placed

Sepetowski v. St. Louis Transit Co.

himself in a perilous position by driving on or near the track, the motorman owed the plaintiff the duty of trying to avoid injuring him, and plaintiff's previous negligence did not bar a recovery for injuries sustained by the motorman's failure to observe such duty.

4. **Instructions.** Defendant is in no position to complain that the court gave a request made by him, though given in an instruction asked by the plaintiff.

5. ——: NEGLIGENCE: LAST-CHANCE RULE. An instruction to the effect that both plaintiff and defendant were guilty of negligence and that plaintiff could not recover, is properly refused, where negligence of plaintiff is conceded by him and his right to recover is based on the rule of last chance.

6. ——: ADMISSIONS AGAINST INTEREST. Where plaintiff made admissions against his interest, it is proper to instruct the jury that while plaintiff is a witness in his own behalf, they are the sole judges of his credibility, and that all statements made against his own interests must be taken as true, but statements made in his own interest are to receive only such credit as the jury deem them entitled to.

7. ——: ——. Defendant was not prejudiced by the refusal of an instruction that the jury were the sole judge of plaintiff's credibility, and that statements made against his own interests must be taken as true, where on plaintiff's evidence the court had instructed the jury as a matter of law, that plaintiff was guilty of negligence.

8. ——: ERRONEOUS: JURY NOT MISLED. Where the evidence shows that the motorman saw, or by the exercise of due diligence could have seen plaintiff near and approaching the crossing, in time to have avoided the accident, and that he made no effort to stop the car or check its speed, the jury was not misled by an instruction in which was erroneously incorporated the hyperbolical phrase of an ordinance "to stop the car in the shortest time and space possible."

9. ——: NEGLIGENCE OF BOTH PARTIES. Where plaintiff admitted his own negligence by driving upon the track without looking or listening, and the court instructs as a matter of law, that he was guilty of negligence, and the evidence of the motorman tends to prove that he exercised that degree of care, skill and foresight that the law imposed upon him: *Held*, it is error to refuse to instruct the jury that if both plaintiff and defendant's operatives of the car were negligent and plaintiff's negligence directly contributed to the accident, the jury should find for defendant.

Appeal from St. Louis City Circuit Court.—*Hon. S. P. Spencer*, Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, Geo. W. Easley* and
*Walter H. Saunders* for appellant.

(1) The objection to the introduction of any evi-
dence under the second count of the petition, which
was identical with the first count, save that the first
was for damage to property, and the second for per-
sonal injury, both growing out of the same occurrence,
should have been sustained. Trammell v. Vaughan,
158 Mo. 214. (2) The demurrer to the evidence should
have been sustained. The plaintiff could have seen
and heard the approaching car for several blocks, had
he looked and listened, and could, by ordinary care,
have avoided the injury. (3) The court declared, in
an instruction given to the jury on behalf of the plain-
tiff, that the plaintiff was guilty of negligence, as a
matter of law, and yet submitted to the jury the ques-
tion of defendant's liability upon a misapprehension
of the humanitarian rule. The evidence showed that
plaintiff, without looking or listening for an approach-
ing car, came trotting down a narrow street, directly
in front of the car, and plaintiff's expert testified that
the motorman could not stop the car within the distance
then existing in time to avoid the accident. Watson v.
Railway, 133 Mo. 250; Murphy v. Railway, 153 Mo.
262; Holwerson v. Railway, 157 Mo. 216; Vogg v. Rail-
road, 130 Mo. 172; Boyd v. Railroad, 105 Mo. 371; Han-
selmann v. Railroad, 88 Mo. App. 123; Killion v. Rail-
road, 86 Mo. 473; Glenville v. Railroad, 61 Mo. App.
629; Karl v. Railroad, 55 Mo. 482; Moore v. Railroad,
126 Mo. 278; 7 Am. and Eng. Ency. of Law (2 Ed.),
p. 386; Cooley on Torts (2 Ed.), p. 812.

*J. Hugo Grimm* for respondent.

(1) Although it be conceded that it was irregular
for plaintiff to state his cause of action in two counts,
asking damages for injuries to his property in one,
and for injury to his person in another, yet such error

could not in anywise have prejudiced the defendant. Sims v. Railroad, 83 Mo. App. 250; Silcox Martin v. McKinney, 64 Mo. App. 330; Lamb v. Railway, 33 Mo. App. 489. (2) The cause of action was negligence of the motorman in running his car. Plaintiff was not confined to one negligent act. He had the right to state and prove either statutory or common-law negligence, or both. Senn v. Railway, 135 Mo. 517-9. (3) It was not necessary to either plead or prove an acceptance of the vigilant watch ordinance; it was binding upon defendant without any acceptance on his part. Jackson v. Railway, 157 Mo. 621; Hutchinson v. Railroad, 161 Mo. 250; Wendler v. People's House Furnishing Co., 165 Mo. 527; Weller v. Railroad, 164 Mo. 180; McAndrew v. Railway, 88 Mo. App. 97. (4) The demurrer to the evidence was properly overruled. If it were conceded that plaintiff was guilty of negligence in driving upon the tracks under the circumstances in this case, which we deny, yet there was ample evidence to show that defendant's motorman, by the exercise of the care prescribed by ordinance, could have discovered plaintiff's position of danger, and did in fact discover it in time to have averted the injury to him by the use of the appliances at his command, and that he made no effort whatever to stop his car even after actually discovering plaintiff's position of danger. Cooney v. Railway, 80 Mo. App. 232; Bunyan v. Railway, 127 Mo. 15; Morgan v. Railway, 159 Mo. 262; Hutchinson v. Railway, 88 Mo. App. 376; Schmidt v. Railroad, 163 Mo. 656. (5) Defendant can not complain of the instruction, for in its instruction No. 9-D, it asks the court to instruct the jury that it was not the duty of the motorman to attempt the stopping of his car until he saw, or could have seen by keeping a vigilant watch, that plaintiff's vehicle was in a position of danger. That instruction presents the question just as broadly as does the instruction given by the court. Christian v.

Ins. Co., 143 Mo. 460; Sowden v. Kessler, 76 Mo. App. 581.

### STATEMENT.

The suit was instituted in a justice of the peace court, in the city of St. Louis, by filing therein a complaint in two counts. After formal allegations, the first count states, "that on October 4, 1901, while plaintiff was driving his wagon, containing groceries, north on Thirteenth street, in the city of St. Louis, it was struck by a west-bound car on Wash street; that as he got into Wash street, one of the defendant's cars came westwardly on Wash street, from a point east of said Thirteenth street, and, owing to the failure of the motorman thereof to ring his bell, plaintiff had no notice of its approach, and, after becoming aware of its approach, was unable to get out of the way of said car. Plaintiff states that said car came along said Wash street at a high rate of speed, and gave no sound of warning as it approached Thirteenth street, so that he drove on Wash street without any knowledge of the approach of said car. Plaintiff states that defendant's motorman in charge of said car violated the ordinance above set out (the vigilant-watch ordinance pleaded *in extenso*) by failing to keep a vigilant watch for vehicles, and by failing to stop his said car in the shortest time and space possible after discovering plaintiff in a position of danger, and was, therefore, guilty of carelessness and negligence, as a result of which his horse, wagon and contents of wagon, were injured, to his damage in the sum of $200, for which he prays judgment."

The second count is a substantial repetition of the first, except it alleges personal injuries to the plaintiff and prays judgment for $300 on account thereof.

After trial and judgment in the justice's court the cause was appealed to the circuit court where, on a trial anew, the jury rendered a verdict for the plaintiff and

assessed his damages at $125 on the first count and at $300 on the second. Timely motions for new trial and in arrest of judgment were filed, both of which the court overruled. Defendant then appealed.

BLAND, P. J. (after stating the facts as above.) — 1. The evidence is that Wash street, in the city of St. Louis, runs east and west and is forty-eight feet wide with a single street railway track laid in its center over which defendant operates street cars from east to west propelled by electric power; that Thirteenth street is sixty feet wide, runs north and south and crosses Wash street between High and Fourteenth streets; that Wash street, east of Thirteenth, is built up for several blocks even with the building line; that Wash street is straight and comparatively level east of Thirteenth street for ten or twelve blocks.

On plaintiff's behalf the evidence tends to prove that on October 1, 1901, about 3:30 p. m., plaintiff was driving a blind horse harnessed to a one-horse spring wagon north on Thirteenth street; that when he reached the crossing of Wash street he heard no bell and did not look east for a car until his horse was within a few feet of the south rail of the track when he saw a car coming from the east close upon him; that he then turned his horse west to avoid a collision but was not quick enough and the car struck the wheel of the wagon and over- turned it, throwing plaintiff out; that the damage to the wagon was $22, to its contents (eggs and glassware) about $14, and to the horse about twenty-five or thirty dollars; that plaintiff's head was cut and he was other- wise bruised and injured, suffered pain and was laid up for a considerable length of time and was unable to attend to his business.

In the wagon with plaintiff was Ben Lewandowski, who, in respect to the accident, testified as follows:

"As we were going north on Thirteenth street, with the intention of going to Biddle street, we got close to

Wash street when Mr. Sepetowski noticed a car coming, and we were both about—well, I don't know exactly how many feet away from the track—and all of a sudden Sepetowski turned the horse around and switched off on the left-hand side of the south side of the street. Just then by switching around, the car hit the wheel and the horse, and knocked the horse down and shoved the wagon up—pushed it up quite a piece—and Mr. Sepetowski was thrown out, and I was thrown out, and I lit on my feet. I was thrown out of the wagon but I lit on my feet.''

The evidence further tends to show that plaintiff was driving along in a jogging trot without looking or listening for a car and that he did not see the car until it was so close upon him that he could not avoid the collision. The evidence also tends to show, on the part of plaintiff, that no warning signal was given as the car approached the crossing of Thirteenth street; that the motorman saw, or could have seen, the plaintiff, if he had looked, at least seventy feet from the crossing; that a car running at ordinary speed could be stopped within from seventy to eighty feet, but that the motorman made no effort to stop the car or check its speed until after the wagon was struck and that he did not then stop until it had run about one hundred and fifty feet.

On the part of the defendant, the evidence tends to show that the warning signal was given as the car approached the crossing of Thirteenth street; that the motorman saw the plaintiff when the car was about fifty feet from the crossing and that he made every effort in his power to stop it but on account of the nearness of the wagon was unable to do so in time to avoid the collision.

For the plaintiff the court instructed the jury as follows:

''1.   Gentlemen of the jury:   The plaintiff in this case did not, under the evidence, exercise such care for

his own protection as a man of reasonable prudence would, under the same or similar circumstances, have exercised, and yet notwithstanding such negligence on the part of the plaintiff, the court instructs the jury that, if they believe from the evidence that while plaintiff was driving his wagon, the same was struck by one of defendant's cars, and plaintiff was thereby thrown therefrom and bruised and injured, and his wagon was damaged, and its contents destroyed or damaged; and if the jury find from the evidence that the defendant's motorman in charge of said car saw, or by the keeping of a vigilant watch for persons on foot and vehicles, either on the track or moving toward the track, and in danger of being injured by said car, would have seen plaintiff's wagon on defendant's track or moving towards it, and in danger of injury from said car; and if the motorman could thereafter have avoided said injury to plaintiff and his property by bringing his car to a stop in the shortest time and space possible, and neglected to do so, then defendant is liable in this case on both counts of the petition. The burden of proving such negligence on the part of the defendant's servants is upon the plaintiff to establish the truth thereof by a preponderance or greater weight of the testimony, and if it is not so proved, your verdict should be for the defendant. If, on the other hand, you find and believe from the evidence that the defendant's servants did not so see the plaintiff in danger in time to stop the car in the shortest time and space possible, and by keeping a vigilant watch, as above defined, would not have so seen the plaintiff in danger in such time, and did stop the car in the shortest time and space possible after plaintiff's danger was seen or by such vigilant watch would have seen, then defendant is not liable for damages in this case,'' and for the defendant as follows:

''1. The court instructs the jury that this case should be considered by the jury as between two persons of equal standing in the community. The fact that

one of the parties is a corporation should not affect your minds in any way, but the right of each party should, and must be determined upon the evidence introduced in the case, and the instructions given to the jury, which are the law, and only law, to guide you in your deliberations.

"2.   The court instructs the jury, that if they believe from the evidence in this case, that any witness in this case has made a statement at this trial, on the witness stand, in conflict with a statement made at a previous trial of this case, then such conflict may be considered by the jury for the purpose of determining the credibility of such witness, and the weight to be given to the testimony of such witness. You are the sole judges of the credibility of all the witnesses and of the weight to be given to the testimony of each.

"3.   The court instructs the jury, that if they believe from the evidence that any witness in this case, at a time prior to this trial, had made a voluntary admission in regard to the facts thereof, and that such admission is in conflict with the evidence given by such witness at the trial of this case, such conflict may be considered by the jury, for the purpose of determining the credibility of the testimony of such witness, and the weight to be given to the evidence of such witness."

On the trial defendant objected to any evidence on the second count of the complaint on the ground that it was identical with the first, which objection the court overruled.   Defendant then objected to any evidence on either count for the reason that neither stated a cause of action.   This objection was overruled.   Defendant then moved the court to compel plaintiff to elect on which count he would go to trial.   This was denied. Defendant insists that there is no principle of pleading by which the same cause of action can be split up into separate causes of action.   His contention is correct. But the suit was commenced before a justice of the peace where no formal pleadings are required by either

party and where, in a case like this, all that is required is a statement of the facts constituting the cause of action. R. S. 1899, sec. 3852. It matters not what the complainant may call his statement, or into how many paragraphs he may divide it, if the whole states facts which constitute a cause of action and is sufficient to bar another suit after judgment on the same cause of action the complaint is good, however inartificially it may be stated.

2. The admission of the vigilant watch ordinance, without specially pleading it and making proof of its acceptance by the defendant, is assigned as error. The rule, that it is necessary to both plead and prove that the defendant street railway company has accepted the ordinance before it can be read in evidence, as announced in the Fath case, has been repudiated by later decisions of the Supreme Court. Jackson v. K. C., Ft. S. & M. R'y Co., 157 Mo. 621; Hutchinson v. Mo. Pac. R'y Co., 161 Mo. 246; Weller v. C., M. & St. P. R'y Co., 164 Mo. 180. The ordinance, properly construed, is but declaratory of the common law duty of corporations operating street railways in populous cities and when pleaded is in effect nothing more than an inartificial averment of that duty that should be stated in clearer and more apt language than is expressed by the ordinance.

At the close of plaintiff's evidence and again at the close of all the evidence defendant moved for a compulsory nonsuit. This the court refused to grant. These rulings are assigned as error. We think that construing the evidence most favorably for the plaintiff it tends to prove that, notwithstanding his negligence in failing to look or listen for a car before attempting to cross Wash street, the motorman saw, or by the exercise of due diligence could have seen, plaintiff's perilous condition in time to have stopped or checked the car and avoided the accident, if so, then the settled rule in this state is that, though the plaintiff negligently

placed himself in a perilous position by driving on or near the track, the motorman operating the car owed the plaintiff the duty of trying to avoid injuring him and plaintiff's previous negligence did not bar a recovery if the injury resulted from the negligence of the motorman in not stopping or checking the car. Watson v. Mound City R'y Co., 133 Mo. l. c. 250; Morgan v. Wabash R'y Co., 159 Mo. 262; Chamberlain v. Mo. Pac. R'y Co., 133 Mo. 587; White v. Wabash Western R'y Co., 34 Mo. App. (K. C.) l. c. 681; Klockenbrink v. St. L. & M. Riv. Co., 81 Mo. App. (St. L.) 351, and cases cited on pages 356-7. Defendant, however, contends that this last chance doctrine is overturned by the cases of Sharp v. Mo. Pac. R'y Co., 161 Mo. 214, and Tanner v. Mo. Pac. R'y Co., 161 Mo. 497.

In the Sharp case the deceased was an employee of the defendant road engaged in taking out old ties and putting new ones in the track. He was doing this work when struck and killed by the defendant's engine. Before and at the time he was struck he was standing outside of the track, the whistle of the locomotive had been sounded and it was reasonably certain that he would step back and let the train pass. In these circumstances his position was not one that presented a reasonable appearance of peril to the engineer.

In the Tanner case, Tanner was standing between two tracks, the one on which the train was running that struck him and another track on which was a standing train. There was ample space between the two tracks for him to have avoided being struck by the running train and there was no reason to suppose that he would not step out of the way, therefore, his position was not one of peril and did not so appear to the engineer, who was running the train.

In both cases the Supreme Court held that under the circumstances the defendant would not be liable in the absence of evidence of wantonness or recklessness of the engineer, and in the Tanner case, at page 512,

recognized the last chance rule but held it not applicable to the facts in the cause. Neither of these cases in the least qualifies the rule.

3. It was claimed by defendant that instruction No. 1, given for plaintiff, is broader than the petition, that the petition charged as a fact that the motorman discovered plaintiff's peril in time to stop the car, etc., while the instruction authorized a recovery if the motorman might have seen his perilous condition, etc. Defendant asked an instruction (No. 8, refused) which contained identically the same error (if it was error). Hence defendant is in no position to complain that the court gave a request made by him though given in an instruction asked by the plaintiff. Christian v. Ins. Co., 143 Mo. 460.

4. Aside from the instructions asked by defendant in the nature of a demurrer to the evidence, defendant asked eight other instructions which the court refused to give. With the exception of Nos. 8 and 11, they were all covered by the instructions given. No. 8 was to the effect that both plaintiff and defendant were guilty of negligence and that plaintiff could not recover. This instruction, we think, was inappropriate for the reason that the negligence of plaintiff was conceded by plaintiff's instruction, and the right to recover was based on the last chance rule. Defendant's instruction No. 11, is as follows:

"11. The court instructs the jury that, while the plaintiff was a witness in his own behalf, the jury are the sole judges of his credibility. All statements made by him, if any, which are against his own interest, must be taken as true, but his statements in his own favor are only to be given such credit as the jury, under all the facts and circumstances in evidence, deem them entitled to."

The instruction is a copy of one given in the case of Feary v. Metropolitan Street R'y Co., 162 Mo. l. c. 105, that was approved by all of division No. 1 of the Su-

preme Court, except VALLIANT, Justice, who dissented and refused to give his sanction to such an instruction in a civil case. The Feary case is the last expression of the Supreme Court as to the correctness of this instruction in a civil suit and is controlling.

When appropriate, as when a party to a suit has made admissions against his interest, the instruction should be given.

The only statement made by the plaintiff against his own interest was to the effect that before attempting to cross Wash street he did not look east for an approaching car until the car was so near upon him that he could not turn his horse in time to avoid a collision thus admitting that he was guilty of negligence in failing to look for an approaching car before attempting to cross the street. On this evidence the court instructed the jury, as a matter of law, that plaintiff was guilty of negligence. Had instruction No. 11 been given, all that the jury could have found under it was that plaintiff admitted that he was guilty of negligence. The instruction of the court took this question away from the jury by telling them, as a matter of law, plaintiff was guilty of negligence, so that the defendant had the benefit of the admission in the most forcible manner it could have been presented and was therefore not prejudiced by the refusal of the instruction.

That to incorporate in an instruction the hyperbolical phrase of the ordinance, "to stop the car in the shortest time and space possible," we all agree was misleading. My associates think that when the phrase is followed by the words "under or in the circumstances" the expression is properly explained. The writer is of the opinion that no words or phrases should be used in an instruction to a jury which requires explanation, except when it is necessary to use technical words or phrases, to properly declare the law of the case, then an explanation or definition becomes necessary to enable the jury to properly understand such

technical words or phrases. He is further of the opinion that the words "under or in the circumstances" are not words of explanation or qualification, but of limitation and can serve no purpose, other than to confine the speculations and guesses of the jury to the shortest time and space in which the particular car might have, by some possibility, been stopped.

But the evidence is all one way that the motorman saw or, by the exercise of due diligence, could have seen plaintiff near and approaching the crossing, at least seventy feet east of it, and in time to have avoided the accident, had he made a reasonable effort to do so, but that he made no effort at all to stop the car or to check its speed. His negligence, therefore, did not consist in not making a proper effort to avoid the collision, but consisted in making no effort whatever to do so. In this state of the evidence, there is no escape from the conclusion that the conductor was guilty of negligence, hence the jury was not misled by the instruction.

5. The court refused the following instruction asked by defendant:

"No. 8-D. The court instructs the jury that if, from the evidence, they believe that both the plaintiff and the servants of defendant operating defendant's car were guilty of negligence, and that plaintiff's negligence directly contributed to the accident, then the verdict should be for the defendant."

The plaintiff admitted his own negligence by driving upon the track without looking or listening for a car and the court instructed the jury that as a matter of law he was guilty of negligence. The evidence of the motorman in charge of the car tends to prove that he exercised that degree of care, skill and foresight that the law imposed upon him. In this state of the law and the evidence one of the controlling issues of fact was whether or not the negligence of the plaintiff directly contributed to his injury; if it did, he was not entitled to recover. Holwerson v. St. L. & Sub. R'y

Co., 157 Mo. 216; Davies v. People's R'y Co., 159 Mo. 1; Rice v. Wabash R'y Co., 92 Mo. App. 35.

The refusal of the instruction under the facts in evidence was prejudicial error for which the judgment is reversed and the cause remanded. *Reyburn* and *Goode, JJ.,* concur.