FELLENZ, Respondent, v. ST. LOUIS & SUBURBAN
RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, March 29, 1904..

1. STREET RAILWAYS: Crossing: Contributory Negligence. In
an action for injuries sustained by collision with defendant's
car at a street crossing, where the evidence showed that plain-
tiff, before starting to drive across the defendant's track, could
have seen a car which was approaching at a high rate of speed,
but failed to look, and, after waiting seven or eight feet from
the track for other parties to pass, drove upon the track, still
without looking for a car, and was struck by the car and in-
jured, he was guilty of negligence which contributed directly
to his injury.

2. ———: ———: Last Chance. And where the evidence showed
that the motorman could not have stopped the car in time to
avoid the collision, the last chance doctrine does not apply.

3. ———: ———: Concurring Negligence. And though the de-
fendant was negligent in not ringing the bell and in running
the car at an excessive rate of speed, the concurring negli-
gence of both parties caused the collision and precludes a re-
covery by plaintiff.

Appeal from St. Louis City Circuit Court.—*Hon. J. W.
McElhinney*, Judge.

REVERSED.

*Dawson & Garvin* and *Leonard Wilcox* for appel-
lant.

(1)    The plaintiff should have been nonsuited, and
defendant's instructions A and B to that effect should
have been given.    Also C and 8 and 9.    Petty v. Rail-
road, 179 Mo. 666; Moore v. Railway, 176 Mo. 544; Kel-
say v. Railroad, 129 Mo. 372; Vogg v. Railway, 138 Mo.
172; Yancey v. Railway, 93 Mo. 433; Hicks v. Railway,

124 Mo. 128; Day v. Railway, 81 Mo. App. 487; Ledwidge v. Railway, 73 S. W. 1008; Harlan v. Railway, 65 Mo. 24; Cogan v. Railway, 73 S. W. 740; Septowsky v. Railway, 76 S. W. 696; Boyd v. Railway, 105 Mo. 381; Van Bach v. Railway, 171 Mo. 347; Guyer v. Railway, 174 Mo. 350; Schaeffstetter v. Railway, 175 Mo. 151; Senn v. Railway, 108 Mo. 151; Mammerberg v. Railway, 62 Mo. App. 567; Spiro v. Railway, 76 S. W. 688. (2) Instruction No. 3 given at request of plaintiff was erroneous because not supported by the evidence; because it permitted a recovery by plaintiff, even though negligent himself, if the speed was negligent and was the sole negligence on the part of defendant; and because it referred to instructions given for plaintiff which were erroneous. Sullivan v. Railroad, 117 Mo. 221; Payne v. Railroad, 136 Mo. 593; Rider v. Railway, 171 N. Y. 152.

*Daniel Dillon* and *Robert R. Shackelford* for respondent.

Under the evidence the circuit court could not declare, as a matter of law, that plaintiff was guilty of negligence in driving across the tracks of defendant. Oates v. Railway, 168 Mo. 544; Kolb v. St. Louis Transit Co., 76 S. W. 1053; Degel v. St. Louis Transit Co., 74 S. W. 157; Linder v. St. Louis Transit Co., 77 S. W. 998; Dahlstrom v. Railway, 108 Mo. 536; Gratiot v. Railway, 116 Mo. 464; Hutchison v. Railway, 161 Mo. 254; Weller v. Railway, 164 Mo. 199; Campbell v. Railway, 75 S. W. 90; Reska v. Railroad, — Mo. —.

STATEMENT.

In August, 1900, and for fifteen years prior thereto, plaintiff resided at No. 6101 Page avenue, in the city of St. Louis, and conducted a dairy and coal business on his premises. His lot fronted south on Page avenue

and was situated on the northwest corner of Page and Cockrill avenues. A wagon gate near the southeast corner of plaintiff's lot opened on Page avenue. The defendant owned and operated a double street railroad track running north and south over its private right of way on the east side of Cockrill avenue, crossing Page avenue (running east and west) at right angles. The cross-ties of the defendant's road were not sunk below the surface, as is usual in the construction of street railways, and a crossing of boards had been constructed over its tracks in Page avenue. Page avenue is seventy-five feet wide. The space in Cockrill avenue between defendant's track and right-of-way and plaintiff's east fence is about twenty-three feet. In this space is a wagonway running north from Page avenue, occasionally, but not often used. On the thirteenth day of August, 1900, between nine and ten a. m., plaintiff drove his two-horse wagon from his premises, through the wagon gate onto Page avenue and when near the middle of the avenue turned east to cross over defendant's track. Before he could clear the track, a car coming from the north on the west track struck a hind wheel of his wagon, carried the wagon about twenty feet and turned it and the horses facing the north. Plaintiff was thrown out, either by the force of the collision, or jumped from the wagon to save himself, and broke his leg. The suit is to recover for the injuries received.

The negligence alleged in the petition is the failure of the motorman to keep a vigilant watch, etc., as required by an ordinance of the city; the running of the car at an excessive rate of speed (twenty miles per hour); and failure to sound the bell or to give any warning of the approach of the car to the crossing. The city speed ordinance was also pleaded.

The answer was a general denial and a plea of contributory negligence.

The plaintiff's narrative of the occurrence is as follows:

"As I started out of the yard the gate was closed and my father opened the gate for me; so as I got out of the gate between the tracks and where I was, there was a man and a lady crossed and I had to check up for this man and lady. The man had crossed before me and the lady intended to stop on this side and I checked up for her and when they crossed I didn't have more than seven or eight feet or maybe six feet for my horses to reach the track, and when I checked up for this man and lady I could not look up the track then on account of the trees and weeds on the corner of our fence and as the man and lady passed me I went on again and I looked up the track and saw the car coming and I intended to stop for it—to check up and swing off—but at the same time I saw I was too late—I was on the track and I bounded up my horses as fast as I could, because if I stood there I would have been killed and this much more to go and I would have been across. It just caught the hind wheel and threw the wagon over and I flew off, and I laid there then."

On cross-examination plaintiff gave the following description of his surroundings:

"At that time the weeds were fully as high as I am on each side of this little driveway; and this little street on the outside of the fence—I guess it is about fifteen feet wide, and the driveway that goes through there may be four or five feet high and the weeds as they grow up are fully as high as I am on each side of this pathway, and when I got out of the yard I couldn't look up the track, when I checked for this man and lady on account of those weeds there and trees. . . .

"When I looked up the track I saw the car coming fast and I just glanced at it and I saw I was in danger. I would judge it was at least seventy-five feet from me. I didn't look at the car long. When I saw the situation I was in and I jerked my lines to pull off one side and I seen I was on the rail and I couldn't stay there and I bounded up my horses as quick as I could and at one,

two, three it was on me and I went over. My horses were not going any faster I guess—one, two, three—they didn't get a chance to make any faster speed, but if his car was under control then I could easily get across.''

Plaintiff further testified that he did not hear the car coming, did not hear any bell; that he did not look to see if a car was coming until his horses were on the track; that he then looked and saw the car within seventy-five of him and coming at a rapid rate of speed. Plaintiff is corroborated in respect to the circumstances attending the happening of the accident, in respect to there being trees and weeds growing in plaintiff's lot and in Cockrill avenue between his east fence and the railroad track, and in respect to the failure of the motorman to sound the car bell until just as the car struck the wagon.

George Bleumm, a witness for plaintiff, placed himself immediately across the street in front of plaintiff's premises, on a platform maintained by the Midland Street Railroad Company for the accommodation of its passengers. He testified that from this platform he saw the car one hundred and fifty yards north of Page avenue and from the middle of the avenue it could have been seen at least four blocks north; that he heard no bell until just as the car struck the wagon and did not notice what the motorman was doing, if anything; that plaintiff stopped his horses to let a man and woman pass in front of him when he was within seven or eight feet of the track, and then drove on and just as his horses stepped on the track he noticed the car; that his attention was first attracted to the car by hearing it when it was one hundred and fifty yards to the north.

Mrs. Kent testified that the car passed her a short distance north of Page avenue; that the motorman ''had his head in the air'' and did not sound the gong until just at the time the car struck the wagon.

Plaintiff's evidence tends to show that the car was

running twenty-five miles per hour (the speed alleged is twenty miles). The ordinance read in evidence allowed a speed of twenty miles per hour in that part of the city where the accident occurred. Plaintiff's evidence also shows that a car running twenty miles per hour, on tracks in the condition defendant's tracks were shown to be at the time and place of the collision, could have been stopped in a space of one hundred and seventy feet by the use of the brake and in the space of one hundred and thirty-five to one hundred and forty feet by using both the brake and reverse, and that a car running five miles per hour could have been stopped in a space of ten feet; that the wagon was pushed twenty to twenty-five feet by the car and the car passed twenty to twenty-five feet beyond the wagon before it stopped. Plaintiff also offered evidence tending to show that Page avenue, at the crossing of defendant's road, was used a great deal by teams and people passing back and forth to stores in the neighborhood.

The motorman in charge of the car narrated the fact as follows:

"I left the Suburban Garden about 9:42, I believe was the time I left there and I came on down and while approaching Page avenue I noticed across over the tops of the weeds there a man's head and I presumed he was in a wagon and I started to take up my brakes and about that time the team came out. The heads of the horses came out from behind the weeds. He was slowing up— the team was almost stopped before he got to the track and he was within about six or seven feet of the track I suppose and I was under the impression he was going to stop and let me go by. I had no reason to stop at Page avenue."

In answer to the following question, "How did Fellenz act?" the motorman said:

"Well, as I said before, he slowed up the team— pulled it up after he came out from behind the weeds and almost came to a stop and of course I was going

down there pretty lively and by that time then he started to go across, and he looked up the track and saw me and started to drive across it. I was within then seventy-five feet of him, I suppose. I had rung my bell and everything I could do before that. Of course when I saw him start to cross the tracks I reversed my car and applied the brakes as fast as possible and rang the bell again also and the wagon had almost passed over the track then and the car hit the rear of the wheel—the hub of the wheel.''

The motorman further testified that his car was running about fifteen miles per hour and that it did not move over seven feet after it struck the wagon. He was corroborated in the main by other witnesses offered by defendant.

It was shown that the wagon was about three and one-half feet high, that the plaintiff was about five feet, seven or eight inches tall, that the track and the surrounding country, looking north for four or five hundred feet, was about level; that the top of the car was between eleven and twelve feet above the track and the trolley wire seventeen or eighteen feet above the track. Plaintiff's evidence shows that the trees, which he claimed obstructed his view, were a few peach trees standing on his lot inside the fence, and the weeds were of the sunflower variety, some of them seven or eight feet high but many of them not so tall.

Defendant offered instructions, in the nature of a demurrer to the evidence, at the close of plaintiff's evidence and again at the close of all the evidence. These instructions were denied by the court and the case was sent to the jury with instructions. The jury returned a verdict in favor of the plaintiff, from which, after taking the usual steps to preserve its exceptions, defendant appealed.

BLAND, P. J. (after stating the facts).—It is strenuously contended by defendant that plaintiff's own

evidence, as well as the whole of the evidence, shows conclusively that plaintiff was guilty of negligence that directly contributed to his injury and for this reason should have been nonsuited.  Plaintiff testified that he did not look for a car until he was on the track in a position of peril from which it was impossible for him to extricate himself.  He stated that he did not hear the car, but he nowhere stated that he listened for one.  As an excuse for not looking, he testified that it would have been no use to look for the reason he could not have seen the car on account of obstructions caused by trees and weeds.  The trees were few in number, not large, being peach trees, and were in defendant's lot from twenty-three to twenty-four feet from the track.  The highest of the weeds did not exceed eight or nine feet, and many of them were not of that height.  Plaintiff was standing in his wagon and, according to his own evidence, his eyes were at least nine feet above the ground.  The top of the car was eleven feet above the ground, the top end of the trolley pole seventeen to eighteen feet above the ground; the ground, from three to four hundred yards north of Page avenue, was about level.  Plaintiff's opinion or guess (nothing more can be made of his evidence on this point) that he could not have seen the car if he had looked, is clearly shown to be erroneous by the foregoing facts.  His evidence is against the mathematics of his environment.  If he had looked before driving out of his yard, he could have seen the car or trolley pole.  Had he looked after he reached the street, when he checked his team to let the man and woman pass in front of him, at which time he was in seven or eight feet of the railroad track, he certainly could have seen the car.  He says he did not look then, that he was looking before him.  He shows that his attention was attracted to the persons then passing in front of him and when they had passed, without looking to the north and without listening for a car, he drove upon the

track.    This was negligence, and negligence which precludes his right to recover, unless the evidence shows or tends to show that after he was in a position of peril the motorman who saw him could have stopped or checked the car in time to have prevented the collision. None of the witnesses place the distance between the car and the horses, when they stepped onto the track, at more than seventy-five feet.    Plaintiff's witnesses estimated the speed of the car at twenty-five miles per hour. The evidence shows that a car running at a speed of twenty miles per hour (the speed alleged) could be stopped by the use of the brake alone in a space of one hundred and seventy feet, and by the use of both brake and reverse in a space of one hundred and thirty-five to one hundred and forty feet.    Plaintiff, himself, placed the distance between the wagon and the car when he first saw it, and when his horses had just stepped on the track, at seventy-five feet, and described the time between when he saw the car and its collision with his wagon by counting "one, two, three."    Plaintiff's evidence shows that the car ran from fifty to seventy-five feet after it struck the wagon, or altogether from the time the motorman should have applied the brake about one hundred and twenty-five to one hundred and fifty feet, about as short a space in which it could have been stopped, according to plaintiff's evidence.    These facts demonstrate that the motorman's evidence, that as soon as he discovered that plaintiff was driving on the track, he used his brake and reversed the power and did all he could to stop the car, is correct and that the evidence to the contrary is not reliable for the reason it is opposed to what actually occurred, and the conclusion is irresistible that there was not time and space sufficient to stop the car in time to have averted the collision after the motorman saw plaintiff driving upon the track.    The evidence, therefore, excludes the application of the last fair chance doctrine and the case presents a state of facts from which it is shown that plaintiff was negligent

in driving on the track without looking or listening for an approaching car and the defendant was negligent in failing to sound the bell as the car approached the crossing and, perhaps, also negligent in running the car at an excessive rate of speed and by reason of the concurring negligence of both parties the car collided with the wagon causing the injury complained of. In such circumstances, that is, where the negligence of both parties contribute to cause the injury complained of, the law is well settled that plaintiff can not recover. Moore v. Railway, 176 Mo. l. c. 544; Davies v. Railway, 159 Mo. 1; Holwerson v. Railway, 157 Mo. 216; Rice v. Railway, 92 Mo. App. 35; Septowsky v. Transit Co., 102 Mo. App. 110, 76 S. W. 693.

We conclude that the defendant's instructions in the nature of a demurrer to the evidence at the close of all the evidence should have been given and reverse the judgment. *Reyburn* and *Goode, JJ.,* concur.