RAY G. HARRIS, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 17, 1913.

1. **PERSONAL INJURY: Collision: Humanitarian Rule.** Where the driver of a covered wagon drives onto a street car track where a car is approaching from the rear, the place being such that the motorman must have seen his peril in time to have stopped the car, and yet collided with the wagon and injured him, the street car company is liable in damages under the humanitarian rule.

2. ———: ———: **Vigilant Lookout: Ordinance: Common Law.** It is the duty of a motorman driving a street car in a populous part of a city to keep a vigilant lookout for vehicles, even though there is no municipal ordinance to that effect. Such duty is required by the common law.

3. ———: ———: Instruction: Damages: Maximum Sum. It is not improper in instructing on the measure of damages, to state that the verdict could not exceed the amount of damages claimed in the petition.

4. DAMAGES: Excessive Verdict: Remitittur. Where the plaintiff's injury in a collision with a street car is confined principally to his foot and the injury to that consists of a fractured bone at the instep, with torn ligaments, leaving the instep slightly enlarged and somewhat less elastic, but with full capacity to walk, and he resumed his work within three months, it was *held* that a verdict for $5000 was excessive, and a remittitur was required.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

AFFIRMED (*conditionally*).

*John H. Lucas* and *Chas. N. Saddler* for appellant.

*E. R. Morrison* and *James E. Nugent* for respondent.

ELLISON, J.—Plaintiff was injured in being thrown from his wagon in a collision with one of defendant's street cars on Thirty-first street in Kansas City. He brought this action for damages and recovered judgment in the trial court.

The drift of the evidence and the instructions require the case to be considered from the standpoint of the humanitarian doctrine. It appears that plaintiff was the driver of a one-horse delivery wagon, with a covered top, for a merchant in Kansas City, and in the performance of his duties he had stopped at one of the residences on the north side of Thirty-first street between Troost avenue on the east and Harrison street on the west. After making delivery there, he came out and looked east towards and beyond Troost avenue for a car. He did not see any and as he intended

168 Mo. App. 22

going to Harrison street he drove slowly about fifteen feet diagonally south and west onto the street car track, and thence directly west along and on the track for about seventy-five feet when he was overtaken by one of defendant's cars which struck his wagon, turned it about and then upset it onto him.

As plaintiff's horse was old, gentle and slow, some little time elapsed after he looked for a car and before he turned across onto the tracks and had proceeded the distance stated. There was a car line on Troost avenue which the Thirty-first street cars must cross, and they made a safety stop at that place. It is down grade from Troost to Harrison and nothing could prevent the motorman from seeing plaintiff's wagon, if he looked at all, from the time he would start up, after his stop, to cross Troost avenue. The wagon being a covered one with its rear to the motorman, its position, its slow progress and the direction it was going was a suggestion to any reasonably careful motorman to look out that he did not strike it. There was direct evidence showing he could have stopped his car in time, but the face of the whole evidence for plaintiff and the conceded facts are abundantly sufficient for the reasonable inference that he had ample time to have slowed down his speed after he must have observed plaintiff's peril, and thereby have averted the collision. The evidence in defendant's behalf tends to show a sudden and unexpected turning onto the track by plaintiff and a collision which it was impossible to avoid. But on a demurrer to testimony we are not concerned with defendant's showing, so long as the evidence for plaintiff is not in conflict with physical facts and is within the bounds of reason.

The instructions are without fault. It is said in criticism of No. 1 for plaintiff that it stated the duty of the motorman to be to keep ''a vigilant watchout ahead,'' when there was no ordinance of the city requiring such watch. This objection is tantamount to

saying that in the absence of a municipal ordinance it is not a want of ordinary care if a motorman does not keep a vigilant watch for vehicles in thickly settled portions of a city. But we think it is; and that an ordinance to that effect is but an affirmance of what reasonable prudence requires of those who handle such dangerous agencies in a city as a rapidly running street car. [Senn v. Southern Railroad Co., 108 Mo. 142, 148; Sluder v. Railroad Co., 189 Mo. 107, 136; Deschner v. Railroad Co., 200 Mo. 310, 329; Sepetowski v. Railroad, 102 Mo. App. 110, 119.]

The amount of damages asked in the petition was fifteen thousand dollars, and plaintiff's instruction submitted that as the sum which could not be exceeded in the allowance of damages. This has been an old time practice and it is now too late to undertake to interfere with it, at least through the courts. [Partello v. Railroad, 217 Mo. 645.]

The instructions given for defendant put every phase of the defense in clear language and they left nothing to be added to which it was entitled. Some offered were refused, but, as just said, the case was fully covered by those given. Number nine might have been well enough if the substance therein had not been included in what had been given, especially in No. 1, and in the last hypothesis stated in plaintiff's No. 1. It seems to us idle to say the jury did not have a full and clear understanding of the case.

The amount of plaintiff's verdict (five thousand dollars) is all that has given us any concern. His injury was temporary and trivial except to his foot. As to the condition of that, and its effect upon him, the parties seem to be in substantial accord except as to the amount of damages. He was kept from his labor not quite three months at which time he resumed work for his employer, for two weeks in some other department, and then he resumed his delivery serv-

ice.  The surgeon who attended him testified that the bones of the instep were dislocated and the ligaments were lacerated and broken, and that possibly some of the bones were fractured, though it was "a little hard to determine just what kind of a fracture."  He said the bones had become more rigid and that "whatever motion there is in the instep is more rigid and not so elastic."  He further stated that "the first bone on the instep leading to the large toe, is elevated and thickened."  He thought the stiffness would never entirely disappear.  Answering the question:  "Is there any great tendency to injury?" he answered, "Nothing excepting for the foot being more awkward, stumbling, something of that sort."  He further stated that he had the use of his foot but that there is some impairment.

We have concluded that the verdict is far in excess of that allowed in cases of greater injury.  That it is out of proportion to sums heretofore thought proper in the Supreme and appellate courts of this State.  Therefore, if plaintiff will remit $2000 within ten days, the judgment will be affirmed; otherwise it will be reversed and the cause remanded.  All concur.