JETT et ux. v. CENTRAL ELECTRIC RAILWAY
COMPANY, Appellant.

### Division One, December 23, 1903.

1. **Negligence:** PEDESTRIAN ON TRACK: PRESUMPTION. A motorman of a street car has the right to presume that children ten and twelve years of age will look to see a car approaching behind them, and that seeing it coming they will get out of its way. But it is also his duty to be on constant watch, and in the event it becomes evident that they are not observing the care they should observe, it becomes his duty to avoid running upon them, if by ordinary care, with the means in hand, he can do so.

2. ———: ———: ABSORBED IN PLAY. The street was the only one through a part of the city a mile wide, and the cross streets were a half mile apart. There was no sidewalk along the street, and on account of its unpaved condition pedestrians traveled along a space sixteen feet wide in the middle of the street, which had a surface of broken stone and granite, and in which were laid the railway tracks. Two children, one nearly twelve, the other ten, years old, came out of their parents' residence, which fronted on this street, and started for school, walking along the track, and were in plain view of the motorman on the approaching car for 500 feet. Plaintiffs' evidence showed that the younger child was trying to walk on the rail of the track, the other assisting him by holding his hand, and they had been so employed for 150 feet or more, when the older one was struck by the car; that no gong was sounded, the car was moving unusually fast, and the motorman was not looking, but was talking to the conductor. The defendant's testimony showed that the children were walking along the side of the track, and when the car got within ten or twelve feet of them they stepped onto the track in front of the car, intending to cross it and get on the track on the other side. *Held,* that it was for the jury to say whether or not the motorman knew, or if he had exercised ordinary care he would have known, the peril of the children in time to have averted the killing of the older one, for if he failed to do that the defendant company is liable.

3. ———: ———: CONTRIBUTORY NEGLIGENCE: EXCEPTION. The general rule of law that damages are not recoverable for injuries sustained when the injured party's own negligence has contributed with that of defendant to cause the injuries, has one exception, and that is: if the defendant, before the injury is inflicted, discovers the peril

(or in some cases, where by ordinary care defendant might have discovered it) and has it in his power then and there, by the exercise of ordinary care, to avert the injury, but fails to do so, he is liable.

4. ———: SUIT BY PARENTS: UNMARRIED FEMALE: ABSENCE OF PROOF. In the absence of any suggestion to the trial court that proof was desired to show that a girl twelve years of age, going to school, was unmarried, the appellate court will presume that she was not married.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

*John H. Lucas* for appellant.

(1) The demurrer offered by appellant should have been sustained, and the court grievously erred in overruling the same. The deceased was guilty of the grossest negligence directly contributing to her death and the court should have so declared as a matter of law. Payne v. Railroad, 136 Mo. 593; Graney v. Railroad, 157 Mo. 679; Campbell v. Railroad, 75 S. W. 90; Tanner v. Railroad, 161 Mo. 497; Holwerson v. Railroad, 157 Mo. 216; Morse v. Railroad, 75 S. W. 676; Nellis, Street Surface Railroads, pp. 367, 68, 69, 77-8; Maxey v. Railroad, 113 Mo. 11; Boyd v. Railroad, 105 Mo. 382; Kelsey v. Railroad, 129 Mo. 362; Hook v. Railroad, 162 Mo. 569; Daviess v. Railroad, 159 Mo. 1; Weber v. Railroad, 100 Mo. 194; Hogan v. Railroad, 150 Mo. 55; Moore v. Railroad, 75 S. W. 677. (2) There was no evidence that the rate of speed was the proximate cause of the injury, and on that issue the demurrer should have been sustained. Molyneux v. Railroad, 81 Mo. App. 28; Thompson v. Railroad, 140 Mo. 125; Payne v. Railroad, 136 Mo. 562; Culbertson v. Railroad, 140 Mo. 35; Hanlon v. Railroad, 104 Mo. 381; Tanner v. Railroad, 161 Mo. 497; Vogg v. Railroad, 138 Mo. 172; Murray v. Railroad, 75 S. W. 611; Moore v. Railroad, 75 S. W. 672; Zumault v. Railroad, 74 S.

W. 1015; Holwerson v. Railroad, 157 Mo. 245.    (3)   Instructions two and three asked by plaintiff ought not to have been given.   They did not correctly declare the law and were not authorized either by the pleadings or the proof.   O'Malley v. Railroad, 113 Mo. 319; McIntosh v. Railroad. 103 Mo. 131; Barker v. Railroad, 91 Mo. 86; Molyneux v. Railroad, supra; Ruschenberg v. Railroad, 161 Mo. 82; Holwerson v. Railroad, 157 Mo. 245; Moore v. Railroad, 75 S. W. 672; Payne v. Railroad, 136 Mo. 593; Tanner v. Railroad, 161 Mo. 497; Murray v. Railroad, 75 S. W. 611.

*Andrew R. Lyon* and *Scarritt, Griffith & Jones* for respondents.

(1)   There was substantial evidence of defendant's negligence upon which to predicate plaintiffs' instructions and submit the case to the jury.   (a)   Appellant contends that its demurrer to plaintiff's evidence should have been sustained.   In considering this question, the court will examine all the evidence, no matter by whom offered, as the defendant did not stand upon its demurrer, but when it was overruled proceeded to introduce its testimony.   Hilz v. Railroad, 101 Mo. 42; Klockenbrink v. Railroad, 72 S. W. 900; McPherson v. Railroad, 97 Mo. 253.   (b)   And in considering the evidence upon this question every part of the evidence in plaintiff's favor, together with all reasonable inferences therefrom, will be taken as absolutely true.   Barth v. Railroad, 142 Mo. 549; Cogan v. Railroad, 73 S. W. 741; Norton v. Ittner, 56 Mo. 351; Barth v. Railroad, 142 Mo. 535; Lamb v. Railroad, 147 Mo. 171; Grocer Co. v. Railroad, 89 Mo. App. 399; Fenner v. Traction Co., 202 Pa. 365.   (2)   The indisputable physical facts and the circumstances surrounding this tragedy are noteworthy.   (a)   St. John avenue, where this occurrence took place, was a public street and thoroughfare.   The child was no trespasser.   She had the same right to be upon the

street and at the place she was killed as had the defend-ant company's car. Oates v. Railroad, 168 Mo. 535; Klockenbrink v. Railroad, 72 S. W. 902. (b) The child was struck at a point on St. John avenue about one hundred feet east of Jackson avenue. This is a thickly settled part of the city. The street car line runs along St. John for about three-quarters of a mile east of Jackson avenue. Along St. John east of Jackson are a number of residences, stores, three greenhouses and Budd park, one of the city's public parks. At that time this part of St. John avenue, between the rails and tracks of the street railway, was paved with macadam, making a good walk, free from mud in wet weather and from dust in dry weather. There was no paving and no sidewalk on St. John avenue east of Jackson, and the morning on which the tragedy occurred was wet and the ground muddy. Vehicles generally, and pedestri-ans almost exclusively, went along the railroad tracks on the macadam coming from the east, until they got to Jackson avenue, when pedestrians would go over to the sidewalk, which extended along the south side of St. John avenue as far east as Jackson. This custom had continued for several years prior to the time in ques-tion and was well known to the defendant and its em-ployees, including the motorman who was operating the car which killed Gertrude Jett. Eckert v. Railroad, 13 Mo. App. 355; Fenner v. Traction Co., supra. (c) The person on the street, whose life was involved, was a a child of tender years. Gertrude Jett, at the time of her death, was eleven years and ten and one-half months old, and her brother at her side was then nine and a half years old. The law requires of those operating street cars a greater degree of care where children are known to be, or may be expected to be on the street. Boland v. Railroad, 36 Mo. 491; Tishacek v. Railroad, 110 Wis. 417; O'Flaherty v. Railroad, 45 Mo. 73. (d) The street car tracks extend straight out St. John avenue for three-quarters of a mile east of the place of

injury.  The car at that place was running up a slight
grade.  The tracks were laid on a plane for about a
block east of the child's home, when there was a break
and the grade was increased, but a child on the spot
where Gertrude was struck would be plainly seen for at
least two blocks east of that place.  (3) Having in mind
the above undisputed physical facts and the relation of
the parties involved, and the knowledge of the car oper-
ators of the existing conditions, the conduct of the de-
fendant's employees was negligent, as charged.  The
motorman, instead of being especially alert at this par-
ticular point on the line, where it was known that many
people walked on the tracks, was paying no attention
to his business, and was not even in his proper position.
Both the law and humanity required that the motorman
be especially alert and active at this point on the line.
Thompson v. Railroad, 93 Mo. App. 548; Fenner v.
Traction Co., supra.  (4) What constitutes negligence
or want of due care is to be determined largely by the
circumstances of the one whose conduct is in question;
by the relation he bears to associated persons and
things.  The law requires of him that he measure up to
the full performance of the duty imposed by the pe-
culiar circumstances in which he is placed.  Grocer
Co. v. Railroad, 89 Mo. App. 399.

VALLIANT, J.—Plaintiffs' minor child was run
over and killed by a street car of the defendant, as they
allege, through the negligence of defendant's servants
operating the car.

The negligence charged in the petition was the run-
ning of the car at a greater rate of speed than twelve
miles an hour in violation of a city ordinance, and in
running the car at a high rate of speed against and over
the child while she was walking along the track, with-
out giving any warning of its approach, and without
exercising reasonable care to avoid striking her after the
servants in charge of the car saw that she was in a posi-

tion of danger, or would have seen it if they had exercised ordinary care.

The answer was a general denial and a plea of contributory negligence.

There are some undisputed facts in the case. They are as follows:

St. John avenue is a public street in Kansas City, running east and west; Jackson street, running north and south, crosses it at right angles; Elmwood avenue, which is parallel with and east of Jackson street, also crosses St. John avenue at right angles. The distance from Jackson street to Elmwood avenue is half a mile, and there is no other street crossing St. John avenue between those two. St. John avenue is the only open thoroughfare running east and west through a section about a mile wide, and it is, therefore, a much-used highway for people living in that part of the city. The defendant maintains a double-track street railroad along the center of St. John avenue. Between Jackson street and Elmwood avenue, St. John avenue is not paved or sidewalked, except a sidewalk in front of the plaintiffs' premises, and except that along the center of the street, a space sixteen feet wide in which is laid defendant's tracks, there is a surface of broken stone and granite. In consequence of the otherwise unpaved condition of the street, the travel both for vehicles and pedestrians is along that sixteen-foot space, particularly so in wet weather when the street is muddy. People usually walked in the railroad tracks because it was better walking than on the street outside, and the children going to school took that course.

The plaintiffs' residence is on a lot that fronts fifty feet on the north side of St. John avenue. From the west line of plaintiffs' lot to the east line of Jackson street is 208 feet. Farther to the east is the residence of Mr. Owen; from his house to Jackson street is 660 feet. Elmwood avenue is still to the east of Mr. Owen's house.

On the morning of February 6, 1900, plaintiffs' two children, a girl aged eleven years ten and a half months, and a boy about two years younger, on their way to school, were on the north track of defendant, when a car of defendant going in the same direction approached behind them and struck the girl and killed her.

In addition to the above undisputed facts, there were other facts about which there was conflict in the evidence, the testimony for the plaintiffs tending to show that the facts were one way, that for the defendant another. If the facts were as the plaintiffs' testimony tended to prove they were, the plaintiffs were entitled to recover; but if the facts were proved to be as the evidence relied upon by the defendant tended to prove, then the verdict should have been for the defendant. The verdict was for the plaintiffs for $5,000, and judgment accordingly, from which the defendant appeals.

I. The question in the case, in our judgment, is one of fact. The principles of law governing it are well settled, and there is little if any real difference in that respect between the learned counsel.

Appellant contends that the testimony shows that these two children were walking on the north side of the north track at a safe distance therefrom as the car approached behind them, and when it had reached within ten or fifteen feet of them, they appeared by their movements suddenly to design crossing the track, and, as if with that purpose, did step on the track within that distance of the car when it was going at its usual speed; that the motorman immediately saw the movement of the children, and did everything within his power to stop the car, but it was impossible to do so; the boy escaped with a scratch, but the girl was crushed beneath the car. There was evidence tending to prove that these were the facts, and the jury were instructed that if they found those to be the facts their verdict should be for the defendant.

But there was testimony upon which the plaintiffs rely which tended to prove the following facts: These children came out of the gate in front of their father's house, walked straight to the north track and went upon it; the boy undertook to walk on top of the north rail and was doing so, his sister walking in the track and holding his hand to assist him in accomplishing his feat; that they continued to walk in that way until the car was upon them; the boy jumped to the right and barely escaped, but the girl was caught. These children then on the track, were in plain view of the motorman, if he had been looking, from the time he reached Mr. Owen's house until he struck them. When the car struck the child it dragged her under its wheels fifty or sixty feet, and stopped twenty-five feet east of Jackson street; the point where she was struck, therefore, was seventy-five or eighty-five feet east of Jackson street. According to this testimony the point where the children went upon the track, that is, on a straight line from the gate in front of their father's house, was 233 feet east of the east line of Jackson street. They walked, therefore, on the track 148 or 158 feet before the car struck them. One of the witnesses, a school girl thirteen years old, who lived east of Mr. Owen's house, was walking west on the south track, and saw these children when they came out of their gate walking towards the track. She waved to them and thought to overtake them; just after that as she came opposite Mr. Owens's house, this car passed her; then she stepped behind it on the north track, and continued to walk west in that track. The car shut off her view of the children, and she saw them no more until after the accident. The evidence was also to the effect that the gong was not sounded, and that the children had no warning of the approach of the car; also that the motorman did not have his hands on the appliances for controlling the car, but was leaning against the car and conversing with the conductor; also that the car was running unusually fast. If the jury believed the evi-

dence tending to prove those facts they were bound to find a verdict for the plaintiffs, even though they also believed that the children were guilty of negligence in walking on the track. The motorman, if he was looking, saw the children at least from the time he passed Mr. Owens's house which was over four hundred feet east of the point at which they went upon the track, so that he ran more than five hundred feet with the children in view before he struck them. Of course, the children would have seen the car approaching them if they had looked in that direction, and it was negligence in them not to have looked. And the motorman had a right to presume in the first instance that they had looked or would look, and that seeing the car coming they would get out of the way. But it was his duty to be on the constant watch, and in the event it became evident that they were not observing the care they should observe, it became his duty to avoid running upon them if by ordinary care with the means in his power he could do so. Whether it must have become evident to the motorman in this case, presuming he was on the lookout, that these children were heedless of the approaching car and negligently unmindful of their danger, was a question for the jury. If they believed from the evidence that a reasonable man in the motorman's place, on the watch and mindful that he was running a dangerous machine, would have seen that these two children were so absorbed in the little exploit the boy was trying to accomplish, balancing himself to walk on the rail with the assistance of his sister holding his hand, and that they were apparently oblivious to the approaching danger, then the jury had the right to say that the motorman knew, or that if he had exercised ordinary care would have known, the danger in time to have averted the accident, and failing to do so the defendant is liable.

We do not attach any importance to the fact that the plaintiffs' testimony tended to show that the car was running faster than twelve miles an hour in violation of

the city ordinance. Twelve miles an hour, under the circumstances of this case, would have been as effective of the result as a greater speed. Assuming that he was going only twelve miles an hour, if the plaintiff's evi-. dence is believed, the motorman saw the peril of the child in time to have averted the accident, but without making any effort to do so, without even sounding his gong, he ran upon them.

The general rule of law that a plaintiff can not recover damages for injuries sustained by him when his own negligence has contributed with that of the defendant to cause the injuries, has one exception, and that is, if the defendant before the injury is inflicted discovers the peril (or in some cases, even where by the exercise of ordinary care the defendant might have discovered it) and has it in his power then and there by the exercise of ordinary care to avert the injury but fails to do so, he is liable. That is the law in this State, so declared in Kellny v. Railroad, 101 Mo. 67, and iterated in Morgan v. Railroad, 159 Mo. 262.

The facts which the plaintiffs' testimony tends to prove bring this case within that exception, and for that reason the court did not err in refusing the instruction asked by the defendant in the nature of a demurrer to the evidence.

There is one other ground assigned by appellant why the demurrer to the evidence should have been sustained: that is, that there was no evidence to prove that the deceased was unmarried. It is true the record shows no evidence offered on that point, but it would be so improbable that a child, not quite twelve years old, living with its parents and going to school from their home, was married, that we should presume the contrary in the absence of any suggestion to the trial court that proof on that point was desired.

The criticism of the action of the court in the giving and refusing of instructions are all based on separate

features of the same propositions, which is appellant's main assignment of error; that is, there was no evidence to sustain the plaintiffs' case, and an instruction for a nonsuit should have been given. We have already discussed that proposition.

We find no error in the record and the judgment is therefore affirmed. All concur.