MYRON E. ROSS, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 5, 1905.

1. **NEGLIGENCE: Crossing Railway Tracks: Look and Listen.** A person crossing railway tracks must devote his attention to his line of travel during the time he is in the range of passing cars and cannot be contented with a last look when entering the sphere of danger and then blunder on oblivious of his surroundings, but must continue to look and listen until safely across.

2. ———: ———: Concurring Acts. Where a person crossing a railway track and the company are both negligent no recovery can be permitted unless these concurring negligent acts are superseded as the proximate cause of the injury by the sole negligence of the company; since if the injured party negligently contributes to the immediate cause of the injury he has no cause of action whatever the negligence of the other party.

3. ———: ———: **Running Down.** Where the company finds a party crossing its track unconscious of his danger and has time to avoid the injury yet deliberately runs him down, it thereby occupies the whole field of culpability and presents itself as the sole producing cause of injury.

4. ———: ———: **Gripman's Duty.** A gripman in taking his car around a busy junction corner must proceed cautiously and with a sharp lookout, but is not required to presume that a pedestrian would act carelessly in going upon the track in front of his car, although he is seen approaching the track; but there must be something noticeable in the footman to apprise the gripman of his contemplated movement into danger, to make it incumbent upon him to stop the car.

5. ———: ———: ———: **Jury Question.** Where there is conflicting evidence as to the gripman's effort to stop the car and as to the distance in which the car could be stopped, it is proper to submit the case to the jury on the doctrine of last chance.

Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

AFFIRMED.

*John H. Lucas* for appellant.

(1) The court erred in submitting the issues tendered by the plaintiff to the jury, for the reason that under the evidence the court should have declared as a matter of law there could be no recovery. Unless it be the law, that a party can recover who negligently runs into a train the cause ought not to have been submitted. Boyd v. Railway, 105 Mo. 380; Watson v. Railway, 133 Mo. 250, 252; Payne v. Railway, 136 Mo. 585; Tanner v. Railway, 161 Mo. 497; Holwerson v. Railway, 157 Mo. 216; Ries v. Transit Co., 179 Mo. 1; Moore v. Railway, 176 Mo. 574; Zumalt v. Railway, 178 Mo. 615; Gettys v. Transit Co. — Mo. —; Nellis, Street Surface R. R., pp. 367, 368, 373; Maxey v. Railway, 113 Mo. 11; Roenfell v. Railway, 79 S. W. 706, 710; Felling v. Railway, 80 S. W. R. 51; Kreis v. Railway, 148 Mo. 321; Petty v. Rail-

road, 179 Mo. 675-9; Reno v. Railway, 79 S. W. 467-9; Davis v. Railway, 159 Mo. 1; McFadin v. Catron, 120 Mo. 252; McKeen v. Calvert, 59 Mo. 244; State v. Taylor, 134 Mo. 154; Lokart v. Buchanan, 50 Mo. 203.

*Frank P. Walsh* and *E. R. Morrison* for respondent.

(1) The question of negligence in this case was properly one for the jury, the facts being in dispute. Baird v. Railway, 146 Mo. 281, l. c.; Gratiot v. Railway, 116 Mo. 466; St. Clair v. Railway, 29 Mo. App. 87; Steube v. Foundry Co., 85 Mo. App. 644; Price v. Barnard, 65 Mo. App. 651; Bartley v. Trorlicht, 49 Mo. App. 299. (2) Even though plaintiff may have been negligent, the gripman saw his peril in ample time to have stopped the car and avoided injuring him. Bunyan v. Railway, 127 Mo. 12; Holden v. Railway, 177 Mo. 456; Winters v. Railway, 99 Mo. 517; Heinzle v. Railway, 81 S. W. 856; Septowsky v. Transit Co., 102 Mo. App. 110; Jett v. Railway, 178 Mo. 672; Meeker v. Railway, 178 Mo. 173; Cooney v. Railway, 80 Mo. App. 233.

JOHNSON, J.—Action to recover damages for personal injuries alleged to have been caused by defendant's negligence. Judgment was for plaintiff in the sum of two thousand dollars. The refusal of the trial court to direct a verdict for defendant is assigned as error. The pertinent facts disclosed by the evidence are as follows:

On the evening of July 20, 1901, plaintiff was injured at the intersection of Fifteenth and Holmes streets, two public thoroughfares in Kansas City. Two lines of cable cars operated by defendant had their junction at that place. One, the "Fifteenth street line," ran east and west on Fifteenth street; the cars of the other— the "Holmes street line"—ran to and from their western terminus on Fifteenth street to Holmes and thence south.

The junction was effected by curved tracks one of which —that connecting the south track on Fifteenth with the west track on Holmes— was used by cars south bound. The length of the curve measured upon the rail nearest the southwest corner was seventy feet. Where it began on Fifteenth street the rail was seventeen feet nine inches from the curb; at its end on Holmes it was twelve feet and at a point forty feet from the beginning five feet nine inches.

Plaintiff coming from the west on the sidewalk along the south side of Fifteenth street for the purpose of boarding an east bound car left the sidewalk a few feet west of the corner and proceeded in a northeasterly direction to cross the curved tracks. From the point where he stepped from the curb to the first rail he travelled a distance of seven feet two inches. A few feet beyond this—the evidence does not disclose just how far—he was struck by a Holmes street car rounding the curve from west to south and injured. No claim is made of an excessive verdict, therefore, it is unnecessary to describe the injuries inflicted.

It is asserted by defendant and we think conclusively shown by the evidence that plaintiff failed to act with proper care for his own safety. In broad daylight with nothing to obstruct his view and knowing of the presence of the car he walked into the collision. He attempted to exonerate himself from blame with the following account of his misadventure. He had been standing upon the sidewalk twenty-five or thirty feet—the exact distance is unimportant—west of the corner engaged in conversation. As he started on his way he saw the car standing on Fifteenth street at the entrance to the curve, about thirty-five feet from where he was afterwards struck. As he stepped from the curb he looked again, noticed the car had not moved and dismissing it from his attention proceeded at an ordinary walk. The

bell was not rung and no warning given until the car was upon him.

He was struck by the south corner of the fender which projected from the front end of the car. Owing to the sharpness of the curve in the track this corner of the fender was at the time as near as can be ascertained from the evidence from three to four feet from the inside rail so that the distance from the curb where plaintiff last observed the car to the place of contact was from ten to eleven feet. The cable which furnished the motive power did not round the curve. The grade slightly declined to the east and south, therefore, with the car standing as described by plaintiff it could be moved only by force of gravity. To credit plaintiff's story requires the belief that while he was walking a distance of eleven feet an act which did not consume more than two seconds, the car started, gained headway and travelled thirty-five feet. A few figures and a moment's reflection will demonstrate the impossibility of the occurrence as described particularly in view of the fact that no witness gave the speed of the car beyond seven miles per hour and the great weight of the evidence fixed it at about five.

But accepting plaintiff's statement even in the face of the physical conditions which so plainly contradict it, his conduct must nevertheless be pronounced grossly careless. He had no right to assume when he stepped from the curb that his way was clear. A person crossing railway tracks in the observance of ordinary care, must devote his attention to his line of travel during the time he is within the range of passing cars. He should not content himself with a last look when entering into the sphere of danger and then blunder on oblivious to his surroundings but must continue to look and listen until safely across.

Plaintiff's counsel evidently recognized the indefensibility of their client's pretension that he acted with

·due care in walking against a moving car for they refrained from submitting to the jury in the instructions asked by them any other issue of negligence than that involved in the alleged neglect of the gripman to make proper effort to stop the car after becoming aware of plaintiff's danger.

Assuming then that plaintiff was negligent in failing to observe the approach of the car; that defendant also was negligent in not ringing the bell or giving other warning and that both of these acts concurred in placing plaintiff in a position of danger no recovery can be permitted without it appears that these concurring acts of negligence were superseded as a proximate cause of injury by the sole negligence of the defendant for the rule is elementary that if the plaintiff by his negligent act contributes in any degree to the *immediate* cause of injury he has no cause of action whatever the negligence of the defendant may be. The doctrine of comparative negligence has been repudiated repeatedly by the appellate courts of this State. [Boyd v. Railroad, 105 Mo. 371; Holwerson v. Railway, 157 Mo. 216; Fellenz v. Railroad, 80 S. W. 49; Moore v. Railroad, 176 Mo. 528.]

But when a plaintiff has reached a position of peril not in wantonness nor with intent to expose himself to injury but through inattention and carelessness and is unconscious of his danger until too late to extricate himself the negligence of the defendant who comprehending his situation in time to avoid injury deliberately runs him down occupies the whole field of culpability to the exclusion of all other acts of negligence and presents itself as the sole producing cause. In such case the contributory negligence of plaintiff but serves to afford a condition for the operation of the final act. [Bunyan v. Railway, 127 Mo. 12; Holden v. Railway Co., 177 Mo. 456; Heinzle v. Railway, 81 S. W. 848; 182 Mo. 528; Sepetowski v. Transit Co., 102 Mo. App. 110;

Jett v. Railway, 178 Mo. 664; Meeker v. Railway Co.,. 178 Mo. 173; Cooney v. Railway Co., 80 Mo. App. 226; Morgan v. Railway Co., 159 Mo. 1. c. 275.]

Under this view the inquiry arises: Is there any substantial evidence in the record from which as a reasonable inference it may be said defendant failed to follow the "humanitarian rule?" Some witnesses testified that from the time plaintiff separated from his companion they observed from his conduct that his attention was distracted and that he was proceeding in the direction of the track without looking to see if his course was clear and it is argued that if this was noticeable to others it must have been to the gripman whose duty it then became to stop the car even before plaintiff left the sidewalk. One answer to this contention is sufficient to dispose of it.

Plaintiff is bound by his own admissions. In his anxiety to defend his conduct he asserted with emphasis that up to the time he stepped from the sidewalk he was watching the car. If this is true which must be conceded in the consideration of this question for it is an admission against interest, there was nothing in plaintiff's actions prior to his step from the curb to indicate that he was proceeding to enter into danger and the gripman was under no obligation to infer that because he was walking in the direction of the track he might not stop before reaching it. On the contrary while it was the duty of the gripman in taking his car around this busy junction corner to proceed cautiously and to keep a sharp lookout (Holden v. Railway Co., supra; Winters v. Railway, 99 Mo. 1. c. 517), he was not required to assume that approaching pedestrians would act carelessly in going upon the track in front of him. His duty to stop began when he saw or might have seen that plaintiff was negligently proceeding to a collision unobserving and unaware of the presence of the car. The fact that a person leaves the sidewalk and comes near the

track is not enough in itself to impose the duty to stop. People frequently do this. There must be something noticeable in the conduct of the approaching footman to apprise an observer of his contemplated movement into danger to make it incumbent upon the defendant to stop. A rule more favorable than this to pedestrians, would seriously impede the operation of street cars and unfairly interfere with the progress of their passengers who have an equal right with others to the use of public ways. [Bunyan v. Railway, 127 Mo. 17.]

The gripman, a witness introduced by defendant, testified that he first became aware of plaintiff's peril when he saw him step from the curb; that his car was going at half speed—about five miles per hour—and that it was then from fourteen to eighteen feet from the place of collision; that he instantly applied the brakes to stop in the shortest possible distance and brought the car to a full stop in ten feet from where plaintiff was struck. From this testimony it must be conceded that defendant's humanitarian duty began with the act of plaintiff in stepping from the sidewalk. The gripman then knew that plaintiff was moving to a collision unaware of his situation and fully realized the imperative necessity of stopping. If he did all that he reasonably could have done to that end defendant cannot be held liable but if he failed to attempt the performance of his plain duty it was proper to let the case go to the jury.

The gripman standing with his hands upon the brake lever was in a position to set the brakes instantly and this he claims to have done. Plaintiff had ten or eleven feet to go and the car traveling at half speed could not have been closer to the place of contact than fifteen feet. Some of the witnesses put the distance even greater. Plaintiff's expert evidence shows that under the existing conditions the car could have been stopped in ten feet; defendant's experts say in twenty. According to the various estimates made by the witnesses the

car ran from ten to thirty feet after it struck plaintiff and many witnesses say that no effort was made to stop it until just about the instant of collision. Bearing in mind that in passing upon a demurrer to the evidence every reasonable inference must be indulged in favor of the plaintiff we are not willing to declare that plaintiff failed to sustain his burden. To do so we must assume that the gripman immediately applied the brakes when plaintiff left the sidewalk—a matter in dispute—and that it was impossible to stop the car in a distance of fifteen feet, another controverted assertion. These issues of fact were for a jury to decide. It was proper, as was done, to submit the case under the "last chance" rule for it is well settled that if the inferences to be drawn from the evidence are not certain nor incontrovertible, the question of negligence cannot be passed upon by the court. [Gratiot v. Railway Co., 116 Mo. l. c. 466; Baird v. Railway Co., 146 Mo. l. c. 281.]

Many objections are urged to the rulings of the learned trial judge upon the admission of evidence. We have considered carefully each of them and find none of sufficient merit to call for special notice.

Criticism is made of plaintiff's instruction numbered one but the points made are fully covered in the views expressed. The case was fairly tried and submitted. The judgment is affirmed. All concur.