JOHN JAGER, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 26, 1905.

1. **STREET RAILROADS:** Negligence: Wantonness. Although a plaintiff in crossing a street railroad track may be negligent, still the company is liable if it fails to use the means at its command to save him, when, with the exercise of ordinary care it would have discovered his danger in time to have done so; and plaintiff does not have to show that the act of injuring him was wanton.

2. ———: ———: Instruction: Evidence: Law. Certain instructions are held to be supported by the evidence and not to submit questions of law to the jury.

3. ———: ———: ———: Conflicting. An instruction based on the concurring negligence of plaintiff and defendant is held not to conflict with one based upon the separate negligence of defendant.

Appeal from Jackson Circuit Court.—*Hon. O. H. Dean,* Special Judge.

AFFIRMED.

*John H. Lucas* and *Ben T. Hardin* for appellant.

(1)    The court erred in refusing instruction numbered 8, offered by defendant in the nature of a demurrer to all the evidence. The injury to plaintiff was the direct and necessary result of his own gross negligence directly contributing thereto. Kelly v. Railroad, 75 Mo. 140; Maher v. Railroad, 64 Mo. 267; Harlan v. Railroad, 64 Mo. 480; Fletcher v. Railroad, 64 Mo. 484; Moody v.

Railroad, 68 Mo. 470; Zimmerman v. Railroad, 71 Mo. 476; Bell v. Railroad, 72 Mo. 50; Purl v. Railroad, 72 Mo. 168; Adams v. Railroad, 74 Mo. 533; Butts v. Railroad, 98 Mo. 272; Culbertson v. Railroad, 104 Mo. 35; Boyd v. Railroad, 105 Mo. 371; Maxey v. Railroad, 113 Mo. 1; Loring v. Railroad, 128 Mo. 349; Kelsey v. Railroad, 129 Mo. 262; Lane v. Railroad, 132 Mo. 4; Sinclair v. Railroad, 132 Mo. 241; Watson v. Railroad, 133 Mo. 250; Huggert v. Railroad, 134 Mo. 673; Payne v. Railroad, 136 Mo. 562; Vogg v. Railroad, 138 Mo. 172; Kreis v. Railroad, 148 Mo. 321; Kotney v. Railroad, 151 Mo. 35; Holwerson v. Railroad, 157 Mo. 216; Tanner v. Railroad, 161 Mo. 497; Hook v. Railroad, 162 Mo. 569; Van Bach v. Railroad, 171 Mo. 338; Moore v. Lindell Railway Co., 176 Mo. 528; Koons v. Railroad, 178 Mo. 591; Ries v. Transit Co., 179 Mo. 1; McGauley v. Transit Co., 179 Mo. 583; Reno v. Railroad, 180 Mo. 469; Glenville v. Railroad, 51 Mo. App. 629; Smith v. Railroad, 52 Mo. App. 36; Jones v. Barnhart, 63 Mo. App. 501; Lien v. Railroad, 79 Mo. App. 475; Molyneux v. Railroad, 81 Mo. App. 125; Skipton v. Railroad, 82 Mo. App. 143; Killian v. Railroad, 86 Mo. App. 473; Hanselman v. Railroad, 88 Mo. App. 123; Grocer Co. v. Transit Co., 89 Mo. App. 534; Barrie v. Transit Co., 102 Mo. App. 87; Fanning v. Transit Co., 103 Mo. App. 151. (2) There is nothing in the evidence in this cause to bring it within what is known as the "humanitarian" rule, or the "last chance" doctrine. The general rule is that the negligence of the plaintiff, which directly contributes to his own injury, bars his right to recover. Kellny v. Railroad, 101 Mo. 67; Sharp v. Railroad, 161 Mo. 236; Tanner v. Railroad, 161 Mo. 497; Morgan v. Railroad, 159 Mo. 276; Moore v. Railroad, 176 Mo. 528; Koons v. Railroad, 178 Mo. 591; Roenfeldt v. Railroad, 180 Mo. 554. (3) The court erred in giving instruction numbered 1 for the plaintiff. Said instruction is without evidence on which to base it, and is misleading; and it is erroneous for the

further reason that the court nowhere told the jury what would constitute negligence. Hinzeman v. Railroad, 182 Mo. 611. (4) The court erred in giving instruction numbered 2 for plaintiff. It is misleading, and calculated to confuse and mystify, instead of to edify, the jury. Hinzeman v. Railroad, 182 Mo. 611; Lee v. Jones, 181 Mo. 291; Carvin v. St. Louis, 151 Mo. 334; Yarnell v. Railroad, 113 Mo. 570. Instruction numbered 3, given for plaintiff, is clearly erroneous. It is in conflict with plaintiff's number 1, which required that plaintiff must have been, exercising reasonable care at the time of the injury. Turner v. Railroad, 78 Mo. 578; Roenfeldt v. Railroad, 180 Mo. 554. (6) There was no evidence that after the motorman saw plaintiff in a position of peril he could have stopped the car in time to have averted the collision. Reno v. Railroad, 180 Mo. 469; Stone v. Hunt, 114 Mo. 166; Wilkerson v. Eilers, 114 Mo. 245; Evans v. Interstate Co., 106 Mo. 50; State v. Hope, 102 Mo. 110; State v. Brown, 145 Mo. 680. (7) Said instruction is also vicious in that it erroneously states that notwithstanding plaintiff's contributory negligence, plaintiff could recover if the motorman could have stopped or slackened the speed of the car and failed to do either. It is settled law in this State that the concurrent negligence of the plaintiff precludes a recovery. Butts v. Railroad, 98 Mo. 272; Boyd v. Railroad, 105 Mo. 371; Watson v. Railroad, 133 Mo. 246; Kreis v. Railroad, 148 Mo. 321; Davies v. Railroad, 159 Mo. 1; Murphy v. Railroad, 153 Mo. 262; Sharp v. Railroad, 161 Mo. 214; Tanner v. Railroad, 161 Mo. 497; Moore v. Railroad, 176 Mo. 528; Reno v. Railroad, 180 Mo. 469; Roenfeldt v. Railroad, 180 Mo. 554; Barrie v. Transit Co., 102 Mo. App. 87; Fanning v. Transit Co., 103 Mo. App. 151; Gettys v. Railroad, 103 Mo. App. 564; Killian v. Railroad, 86 Mo. App. 473; Skipton v. Railroad, 82 Mo. App. 143; Lien v. Railroad, 79 Mo. App. 475; Jones v. Barnard, 63 Mo. App. 501; Smith v. Railroad, 52 Mo. App. 36.

*F. E. House* and *Cyrus Crane* for respondent.

(1) The rule quoted by appellant in point numbered 1, is only the rule when the facts tending to show contributory negligence are undisputed. "When they are disputed, the question of negligence is one for the jury." Bell v. Railroad, 72 Mo. 57; Williamson v. Fisher, 50 Mo. 198; Cook v. Railway, 63 Mo. 397; Kelley v. Railroad, 70 Mo. 604; Walsh v. Morse, 80 Mo. 568; Berry v. Railroad, 124 Mo. 245; Sely v. Collins, 55 Mo. App. 55, 62; Rice v. Salley, 176, Mo. 107, 145; Kelley v. Railroad, 75 Mo. 140; Maher v. Railroad, 64 Mo. 267; Harlon v. Railroad, 65 Mo. 22; Adams v. Railroad, 74 Mo. 553; Frick v. Railroad, 75 Mo. 595; Warner v. Railroad, 81 Mo. 368; Donohue v. Railroad, 83 Mo. 543; Bergman v. Railroad, 88 Mo. 678; Donohue v. Railroad, 91 Mo. 365; Dunkman v. Railroad, 95 Mo. 244; Kelley v. Railroad, 101 Mo. 67; Hanlon v. Railroad, 104 Mo. 389-391; Fielder v. Railroad, 107 Mo. 645; Czezewska v. Railroad, 121 Mo. 201; Bunyon v. Railroad, 127 Mo. 12; Watson v. Railroad, 133 Mo. 246; Halverson v. Railroad, 157 Mo. 216; Schmidt v. Railroad, 163 Mo. 645; McAndrew v. Railroad, 88 Mo. App. 97; Hutchinson v. Railroad, 88 Mo. App. 376; Klockenbrink v. Railroad, 81 Mo. App. 351; Edwards v. Railroad, 94 Mo. App. 36; Shanks v. Traction Co., 101 Mo. App. 702; Nolle v. Traction Co., 100 Mo. App. 367; Jersey F. D. Co. v. Traction Co., 103 Mo. App. 92. (2) Appellant's statement of the "humanitarian" rule is not correct. Willfulness, wantonness, or recklessness, is not a necessary element of that doctrine. Hinzeman v. Railway, 182 Mo. 611. (3) There is evidence tending to prove that defendant's servants "were at the time carelessly and negligently running said car at an excessively rapid rate of speed." (4) Instruction numbered 2 is clear and plain and declares the law, especially when considered with plaintiff's instruction numbered 5, which defines "ordinary or reasonable care." Heinzle v. Railroad, 182 Mo. 555. (5)

Plaintiff's instruction numbered 3 is not in conflict with number 1 given for plaintiff.

BROADDUS, P. J.—"It is alleged in plaintiff's petition that on the 15th day of April, 1903, between the hours of five-thirty and six-thirty in the afternoon, the plaintiff was driving across Main street at the corner of Spring street, in an ordinary rock wagon, drawn by two horses, intending to go south on Main street; and as he was crossing the tracks of the railway on said Main street, a south-bound car of appellant was so carelessly, recklessly and negligently run and operated by appellant, at such an undue and excessively rapid rate of speed, without ringing the bell or giving any other warning of approach, that it was run into and against the wagon in which plaintiff was riding, throwing him violently to the ground, the result of which plaintiff received a broken shoulder blade, an injury to his ankle, and body bruises; that defendant's servants in charge of the car saw plaintiff and his wagon on the track, or by reasonable care could have seen him in time to have avoided injury to him." Defendant's answer was the general denial coupled with the plea of contributory negligence, to which plaintiff filed the usual reply.

The facts, as disclosed by the evidence, are these: Main street in Kansas City runs north and south; Thirty-first and Thirty-second streets run east and west, crossing Main at right angles; between Thirty-first and Thirty-second streets is Spring street which enters into Main street from the east, but does not cross Main street. Main street is eighty feet in width and Spring street is fifty feet; from Thirty-first street southward, it is three hundred feet distant to Spring street; on the southeast corner of Spring and Main streets is situated a drug store running back eastward on the south side of Spring street, and at the north side of the drugstore there is a watering trough, which is sixty-four feet eight inches east of the east rail of defendant's double track

railway in Main street; from the west rail of the west track to the curbing on the west side of Main street is twenty-three feet.  Said watering trough is forty-two feet east of the curb line on the east side of Main street; and from the property line, or the corner of the drug store, the watering trough is twenty-six feet east.  The width of each track is over five feet, and the space between the tracks over five feet.

Plaintiff, at the time of his alleged injuries, was sixty-four years old, and was in the business of hauling rock.  On the 15th day of April, 1903, the plaintiff, after hauling rock all day, at about six o'clock in the evening, drove from the north, on Main street, turned into Spring street, drove to the trough, watered his horses, and then backed his wagon in a north-westerly direction, in order to make a turn to the right, so he could go on south on Main street.  After making the turn, he drove in a southwesterly direction, angling across the street car tracks; as he started to go across the east track, a north-bound car passed, and plaintiff crossed that track behind said north-bound car.  When plaintiff started from the watering trough to go across the tracks, he looked north and saw a car about half way between Spring and Thirty-first streets, coming south, and also the car that struck him leaving Thirty-first street.  He passed behind the north-bound car, and crossed the first or east track, and drove onto the west track, looked back and saw the first south bound car and he pulled his team and wagon onto the east track, and allowed that car to pass, and immediately pulled back to the right onto the west track, and on looking back as he went to go on that track, he saw the second south-bound car, seventy-five or eighty yards behind him; that is his version of the matter.

Plaintiff gives as a reason for not going straight across Main street that a number of wagons were standing in the street west of the tracks, and he drove southwesterly to get over on the west side of Main street to

go on south. He had driven from Twenty-sixth and Main, south on Main to Spring street, and crossed the tracks in order to get to the watering trough. Plaintiff says that he passed in front of the first car going north as he went from the watering trough west across the east track, and at that time he could see north on Main to Thirty-first street, and the south-bound car which hit him was then at Thirty-first street; and another south-bound car was about half way between Thirty-first and Spring streets, and when he got partly on the west track he said he "throwed" his horses on the east side of the track and let that car pass. When that car passed him, he then "throwed his horses on the west side and the other car came and come against the wagon." There were two south-bound cars in the block north of Spring street, when he started to cross over; he got onto the west track, and then turned to the south and then east off that track to let the first south bound car pass, and immediately turned west again onto the west track, knowing the other car was coming right behind him. On this point he was questioned as follows:

"Q. Did you notice, when you turned to go over on the west side, where the second car was—the car that hit you—where was that, then, when you started to turn over? A. The second car what hit me? Q. Yes, sir; where was that, then? A. About thirty-five yards behind me. Q. That would be in feet, a little over a hundred feet? A. Yes, sir. Q. Somewhere near a hundred feet, at the time you turned to go back across the track again? A. Yes, sir. Q. When you turned out of the way of that car your horses were headed south, were they not? A. Yes, sir. Q. They were on the east track at that time? A. Yes, sir. Q. Before you turned them around and got them on the west track, did you look up to see whether there was any other car coming? A. Yes, sir. Q. Where was it then? A. It was about thirty or forty yards behind me at that time." The fore-

going is taken from appellant's abstract and is admitted to be practically correct.

The motorman testified that he saw plaintiff when the car started from Thirty-first street and that he saw him backing away from the water trough going south. Plaintiff all the while was in plain view of him. He says that he commenced watching plaintiff when he was within a half block from him. He also stated that the car was running at the rate of eight or ten miles an hour; and that he at that rate of speed could usually have stopped the car at the distance he was from plaintiff when he discovered his danger in time to have prevented striking him, but he was unable to do so on that occasion—but he does not give any reason why.

Plaintiff stated that he knew the car was coming but that he could not get off the track because other wagons were in the way, and that he signaled the motorman to stop. The evidence tended to show that the car was run at a rapid rate of speed. Plaintiff stated that they ran as fast as they could go, and it was shown that the force with which it struck was sufficient to kill one of plaintiff's horses and carry the weight of the wagon and load —2,000 pounds—as some witnesses stated, "fifty feet."

The judgment was for plaintiff and defendant appealed.

The defendant offered a demurrer to plaintiff's evidence which was refused by the court. It is insisted that the action of the court in that respect was error as the evidence showed that plaintiff was guilty of such contributory negligence as precluded his right to recover, and that there is nothing in the evidence that brings the case within the humanitarian rule as the acts of defendant did not show a willful and wanton disregard for human life. The plaintiff was not a trespasser as he had a right to be on the street in question. We have at the present term gone into the question raised by defendant as to the application of said rule. See Ross v. Railway,

114 app—2

113 Mo. App. 600, and Williams v. Railroad, 114 Mo. App. 1, wherein we hold that although the complainant may have been guilty of negligence that contributed to his injury, the company is liable if it failed to use the means at its command to save him, when, by the exercise of ordinary care, it would have discovered his danger in time to have done so. This rule certainly applies to the facts of this case, as it was shown that defendant's motorman not only could have seen plaintiff in time, by the use of proper care, to have averted the danger, but did actually see him in peril a sufficient length of time previous to have done so. We again call attention to the late case of Morgan v. Railway, 159 Mo. 262, where the whole question is gone over, and which is conclusive against defendant's theory. There is nothing in Roenfeldt v. Railway, 180 Mo. 554, Koons v. Railway, 178 Mo. 591 or Moore v. Railway, 176 Mo. 528 applicable to this case. Even where the evidence shows that the defendant saw the complainant in danger and injured him, does not follow that the evidence must show that the act was wanton to enable the injured party to recover. [Hinzeman v. Ry. Co. 182 Mo. 611.]

It is further insisted that the court committed error in giving instruction number one for plaintiff for the reason that there was no evidence that defendant ran its cars at a rapid rate of speed. But we think there was ample evidence upon which to predicate the instruction. And the other objection that it left the jury to determine, as a question of law, what constituted negligence is equally without merit as the court fully and correctly instructed the jury as to the law in that respect.

The criticism on instruction numbered three is hypercritical. It is not in conflict with instruction numbered five given for defendant and it does not appear to be in conflict with defendant's number one, which reads as follows:

"The court instructs the jury that in this case the mere fact that the plaintiff was injured by a street railway company gives him no right to sue and recover damages therefor from such street railway company. Before he can recover in this case, you must find not only that the defendant street railway company was negligent in the particular and specific respects submitted in these instructions, but you must further find that such negligence was the direct cause of his injury, and even then he cannot recover in this case if he was negligent and his negligence contributed to his injury."

Said instruction is based upon the concurring negligence of both plaintiff and defendant as the direct cause of plaintiff's injury, while that of plaintiff is based upon the separate negligence of defendant as the direct producing cause. Both state correct propositions of law and as such in no way conflict.

It is further insisted that the instruction is wrong because there was no evidence upon which to predicate it. That is to say, that there was no evidence that after the motorman saw plaintiff he could have stopped the car in time to have averted the collision. This is renewing the former contention, leaving out of consideration the other theory of the case that defendant was liable if the motorman could have seen the plaintiff in time, by the exercise of proper care, to have saved him from injury. There was evidence that the motorman could have stopped the car after he saw the plaintiff in danger had he made a proper effort. He stated that he had stopped his car at other times going at the same rate of speed within the distance plaintiff was from him at the time he discovered him on the track, but for some reason not given he was unable to do so at the time in question. It was a question therefore for the jury and was properly submitted by the instruction.

Affirmed. All concur.